# Case No. 9,342.

## MAYER v. FOULKROD et al.

### [4 Wash. C. C. 503.] [1]

Circuit Court, E. D. Pennsylvania. April Term, 1825.

JUDGMENT—RES JUDICATA—BAR — PARTIES — ATTORNEY AND CLIENT—COMPROMISE.

1. If a defendant, acting bona fide, and without connivance with the plaintiff to enable him to obtain a judgment, is compelled by the judgment to pay what another, and not that plaintiff is entitled to, he may, in an action by that other against him to recover the money a second time, plead the former judgment in bar for his own protection. The money so recovered by the first judgment, is to be considered as recovered to the use of the real owner, who may maintain assumpsit against him for money had and received.

[Cited in Vasse v. Comegys. Case No. 16,893.]

[Cited in Tarleton v. Johnson. 25 Ala. 300; Deysher v. Triebel. 64 Pa. St. 385; Whipple v. Whitman. 13 R. I. 516; Spencer v. Dearth, 43 Vt. 107.]

2. In what cases a compromise made by an attorney at law, will or will not bind a client.

[In this case a demurrer to the bill was overruled in Case No. 9,341.]

Condy & Dundas, for plaintiff.
Mr. Rowle, for defendant.

WASHINGTON, Circuit Justice. The bill states that John A. Holt, by his last will, devised all his real estate to his wife during her life, and after her decease, that the profits of the same should be enjoyed by his daughter, Catherine Sheneck, during her life; and after her death the said real estate to be sold by his executors, and the money thence arising to be equally divided amongst the grandchildren of the testator then living, share and share alike, except his grandson, Michael Cooper, who was to have two shares. That the testator died in the year 1788, and his will was proved by his executors therein named, (of whom George Foulkrod was one,) who took upon themselves the burthen of executing the same. That Catherine Sheneck, the daughter, died in the year 1808, and the widow of the testator in the year 1792. That at the time of the death of the widow and the daughter, the following grandchildren of the testator were living: that is to say, Mary C. Sheneck who intermarried with Lewis Benner, the plaintiff's intestate, Elizabeth Sheneck who intermarried with John Darr, Michael Cooper, Adam Sheneck, Jacob Sheneck, Sophia Sheneck who intermarried with Jacob Luntz, and Barbara Sheneck who intermarried with Michael Knurr. That on the 4th of April, 1809, George Foulkrod, the surviving executor, sold the real estate of the testator pur-

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr., Esq.]

suant to his will, for the sum of $12,000, which he received. In the years 1799 and 1801, Cooper, Adam and Jacob Sheneck severally assigned their shares of the estate of said Holt to Lewis Benner, for a valuable consideration; and that, previous to the bankruptcy of the said Benner, he agreed with Darr and his wife for the purchase of their share, for which he paid a part of the consideration. That by these transfers, and the purchases, the said Benner became entitled to five eighths of the estate of said Holt, in addition to the share to which he was entitled in right of his wife. That George Foulkrod died in the year 1811, and the defendants are his administrators. The prayer of the bill is for an account and payment of the shares to which Benner was thus entitled.

The answer admits all the material allegations in the bill, but alleges that after the assignments to Benner by Cooper and the two Sheneck's, and the purchase from Darr, he, Benner, was duly declared a bankrupt under the bankrupt law of the United States, and the whole of his estate was assigned to A. Burt and J. C. Seton, by virtue of which all his right to the estate of said Holt became vested in his assignees under the commission. That, notwithstanding this, Benner afterwards assigned all the said shares, as well as the one to which he was entitled in right of his wife, to Frederick, and Henry Amelong, merchants of New Orleans, who assigned the same to L. Krumbhaar, of Philadelphia, or by some instrument empowered him to receive the amount of the said shares. That Burt and Seton as assignees, commenced a suit in this court against Foulkrod, in April, 1809, to recover the amount of the said shares, and on the 6th of November, in the same year, a verdict and judgment were rendered in their favour for the sum of $7072.25 cents, including Darr's share. That Krumbhaar had full notice of these proceedings and acquiesced therein, contending only for the share of Mrs. Benner. That, for the purpose of obtaining the opinion of this court, whether he, or the assignees under the commission, were entitled to that share, an amicable suit was entered in the name of Krumbhaar v. Burt [Case No. 7,944], and that the decision of the court was in favor of the plaintiff in that suit. The answer then alleges that the above judgments have been fully paid and satisfied, and the executor's accounts of George Foulkrod settled and passed by the orphan's court; and finally, that the verdict and judgment obtained by the assignees of Benner under the commission, is a bar to the present suit.

The question which arises upon the facts stated in the bill and answer, and which the latter relies upon as a bar to this suit is, whether the plaintiff is entitled to a decree to compel the defendants to pay over again the money which was recovered against

their intestate by the judgment of this court, at the suit of the assignees of Benner, and which was paid to them accordingly. If, upon the stern principles of law, which the more benign principles of a court of equity cannot control, he is so liable, it will be in vain to call his case a hard one. Justice must be administered, be the consequences what they may. There is, nevertheless, something in the proposition that he is so liable, which so outrages all our notions of justice, that we must hesitate to adopt it as law, unless it could be demonstrated to be such by unquestionable authority. No case to sanction this doctrine was read, or referred to by the counsel for the plaintiff; nor have we been able to find one which comes up to the point. We have examined the cases which are cited in the books to establish the general principle, that a verdict and judgment cannot be given in evidence, or be pleaded, except between the same parties or privies; but none of them, in our judgment, touch the question which is proposed to be decided. They are, in general, cases respecting land titles, or the admissibility of a verdict and judgment as evidence, or as a bar to affect the rights of those who are neither parties nor privies to that suit, or to fix a responsibility upon them. They prove nothing further than that the right of him who was not party or privy to the suit, is not affected by the judgment. The present is altogether a different question; it is this—can a person be legally called upon to pay to one man a sum of money which, by the judgment of a court of competent jurisdiction, he had been compelled to pay to another; his conduct in defending the latter suit having been in all respects fair and honest? If he can be so called upon, and compelled to pay the money over again to the plaintiff in the second suit, it seems at least to be a reproach upon the law, that it should not protect a man against the consequences of an act which itself compelled him to perform.

It may possibly be said that this view of the question is altogether on one side, and that the hardship to which the creditor would be exposed by losing his remedy against his original debtor, in consequence of a judgment in a suit in which he was neither party nor privy, is equal to that of which the debtor complains by being twice charged. It is possible, we admit, that in some instances, this may be true. But grant, for the sake of the argument, that the equity of these parties to disregard the judgment on the one side, or to be protected by it on the other, is equal; why, it may be asked, should the rule of law operate against the defendant rather than against the plaintiff? We think it will not be easy to answer this question satisfactorily. May not the defendant fairly claim the protection of the rule of law which in cases of equal hardship, and of equal equity, where a loss is to

be avoided, declares, melior est conditio defendentis? We see no reason why he may not.

But let us examine more particularly, whether the equity, and the claim to indulgence are equal between these parties. A lis pendens is constructive notice to all persons; independent of which it is quite improbable that a suit can be carried on in a court of justice between two persons, which involves the interest of a third party, and that such third party should be ignorant of the fact. It can seldom happen therefore that he can excuse himself from the charge of culpable negligence, in not interposing his claim to prevent the injury of which he complains. Supposing the equity of these parties then to be in all other respects equal, it must cease to be so in consequence of the laches of the one who has occasioned the loss.

But again. The doctrine insisted upon in this opinion is, not that the right of the real creditor, or person entitled to the money or thing recovered in the first action, is concluded, or in any manner affected by the judgment, but that his remedy against the same defendant is barred by the judgment against him. Had the judgment been in his favour, he clearly could not plead it in bar of the action as he might do to a second action brought by the same plaintiff. The money which the latter paid to the plaintiff in that action, not voluntarily, but by compulsion of law, is still the property of the party really entitled to it, notwithstanding the judgment; because the suit by which it was recovered, being res inter alios acta, his right cannot be affected by it. The money to which the plaintiff is entitled, has only changed hands by force of a legal and compulsory sentence of a competent tribunal, and upon every principle of justice and of law, it is money received by the plaintiff in the first suit to the use of the real owner of it. His right of action to recover it remains unimpaired and unchanged by the judgment, except that the plaintiff in that action, instead of the defendant is made the debtor. It is possible; and in this event only can the real owner be injured; that this receiver of the plaintiff's money may be a less responsible man than the original debtor. Yet he is certainly enriched by all that he has recovered, and therefore it can seldom happen that a loss will be sustained unless it should arise from the negligence of the real owner in asserting, in time, his right to the money. But on the other hand, if the original defendant should be compelled to pay over again the money to the real owner, he would be entirely without remedy, since the judgment would, beyond all question, be a bar to any suit in law or equity which he could bring against the plaintiff in the original action to recover back the money. The doctrine, that a man who, acting bona fide, and above all just suspicion of having connived with the original plaintiff to enable him to obtain the judgment, is compelled by that judgment to pay what a third person, and not that plaintiff was entitled to; is protected by that judgment against the claim of the real owner, and that the remedy of the latter is only against the person who has unjustly received it, is not unsupported by authority. In the case of Le Chevalier v. Lynch, 1 Doug. 170, it was decided, that if a bankrupt has money owing to him out of England, the assignment under the bankrupt laws so far vests the right to the money in the assignees, that the debtor shall be answerable to them, and shall not turn them round by saying that he is accountable only to the bankrupt. But if, in the mean time, after the bankruptcy, and before payment to the assignees, money owing to the bankrupt out of England is attached, bona fide, by regular process, according to the law of the place, the assignee in such case cannot recover the debt. In this case, the suit was brought against the debtor of the bankrupt in whose hands the money had been attached, and the decision of course was, that it could not be recovered by the assignees against him.

The case of Phillips v. Hunter, 2 H. Bl. 402, was that of a debt recovered in the United States by attachment, by a creditor of the English bankrupt, against one of his debtors, after the commission; and the creditor who recovered the money, having come into England, an action for money had and received was brought against him by the assignees, and a judgment was rendered in their favour. Upon a writ of error to the court of exchequer chamber, all the judges, Eyre, chief justice, excepted, concurred in opinion that the assignees were entitled to recover the money from the attaching creditor, as money received to their use. In giving their opinion, those judges say, that the cases of Le Chevalier v. Lynch, Allen v. Dundas, 3 Term R. 125, and Clerc v. Mills, Cooke, Bankr. Law, 370, only prove that where a debtor has paid money under due process of local law, he shall not be compelled to pay it over again; that the recovery, although conclusive between the parties, is to be considered as being for the use of the assignees. And in answer to the objection that the assignees ought to have stated their claim in the attachment suit, the court say, "that it does not appear that they had notice of it. As to the defendant, the judgment is conclusive." The chief justice, whose opinion was that the action could not be supported even against the attaching creditor, lays it down, nevertheless, that if a creditor of the bankrupt, from any cause, say defect of evidence, or error in the judge, should, after the bankruptcy, recover from a debtor of the bankrupt, he would be entitled to hold and pursue it to all its consequences, until the judgment is impeached in a due course of law. So that this distinguished judge, though he differed from the rest of the court as to the liability of the at-

taching creditor, concurs nevertheless in the doctrine that the defendant, who had been compelled by the judgment of the court, although an erroneous one, to pay the money, could not be called upon to pay it over again. This case appears to us to go the whole length of deciding all the doctrine insisted upon in the opinion. It was decided originally in the court of king's bench, without argument, the case being considered as decided by that of Hunter v. Potts, 4 Term R. 182. It may further be observed, in passing, that Law, who argued the latter case for the assignees, admitted "that nothing could be more clear than that a person who had been compelled by a competent jurisdiction to pay the debt once, should not be compelled to pay it over again." The last case which we think it necessary to refer to, is that of Embree v. Hanna, 5 Johns. 101, in which the broad doctrine before stated is asserted, and ably reasoned upon by Kent, chief justice, who delivered the opinion of the court. Were this then an action at law, we should consider ourselves fully warranted in deciding that it could not be maintained. But since it is possible that others may not view the subject in the same light that we do, we shall proceed to consider the precise case before the court. It is a bill filed on the equity side of the court, not by Foulkrod to be relieved against the claims of the administrator of Benner, for money which his intestate had once been compelled to pay to Benner's assignees, but by that administrator, for the purpose of enforcing such double payment. He ought, therefore, to make out a strong case of equity to entitle him to a decree. But what is the case?

The assignment of all the estate and effects of Benner which were assignable under the bankrupt law of the United States, was duly made in April, 1802. A part of the estate of the bankrupt consisted of certain legacies which he claimed in right of his wife, and as assignee, of other legatees, his right to which depended upon a contingency which did not happen until some years after the bankruptcy and assignment. After the contingency had happened, Benner made absolute assignments of the above legacies to F. and A. Amelong, for a valuable consideration stated in the deeds, and, on the same day, the Amelongs gave a general power of attorney to L. Krumbhaar, to demand, sue for, and recover from the executors of Holt, the legacies so assigned to them by Benner. On the 24th of March, 1809, the assignees of Benner under the commission, and Lewis Krumbhaar in behalf of the Amelongs, each notified the executor of Holt of their respective claims to these legacies, and warned him not to pay them to any person save to themselves respectively. Immediately after this, the assignees commenced an action against the executor in this court, and on the 6th of November, 1809, after a trial, in which the counsel for the executor has sworn that the cause

was defended to the utmost, a verdict and judgment were rendered for the amount claimed by those plaintiffs. The executor, aware of the delicate situation in which he was placed by these conflicting claims, filed, at the first term, a bill of interpleader against all the parties, praying that they might be compelled to interplead, and for an injunction to stay proceedings in the suit of the assignees. The injunction was denied upon the ground of a want of jurisdiction, in consequence of which, this remedy became of no avail to the executor. Soon after Krumbhaar received his power of attorney from the Amelongs, he took the opinion of his counsel, a distinguished member of the bar, as to the title of his constituents to the legacies assigned to them by Benner. The opinion of that gentleman was, that the Amelongs were entitled to claim only the legacy of Mrs. Benner, and that the other legacies which had been assigned to Benner, passed under the commission and assignment to his assignees. This opinion was immediately forwarded by Krumbhaar to his constituents, from whom nothing, so far as the evidence goes, was afterwards heard indicative of the effect which that opinion had upon them in respect to their claim of the other legacies. But their conduct spoke all that their language could have expressed. For just previous to, or on the day when the above judgment was rendered at the suit of the assignees, an agreement was entered into, signed by the counsel for Krumbhaar and the assignees, to enter an amicable action in the name of Krumbhaar against the assignees, and that a case should be stated for the purpose of taking the opinion of the court upon the question, which of them was entitled to Mrs. Benner's legacy. The case was accordingly made, stating only such facts as were necessary to raise that question. It is not unworthy of remark, that the agreement above referred to was not entered in the amicable suit, but in that of the assignees against Foulkrod. The case, after stating the facts relating to Mrs. Benner's legacy, concluded with an agreement, that the rights of the two parties are the same as if the question was raised in a suit by either party against the executor, or as if a bill of interpleader had been filed by the executor. The opinion of the court in the amicable suit was pronounced on the 15th of November, 1809, in favour of Krumbhaar, upon the ground, that the legacy of Mrs. Benner depending upon the contingency whether she should be living at the time when it should happen, which was some years after the bankruptcy and assignment, it did not pass to the assignees under the commission, upon a correct construction of the bankrupt law of the United States. On the 18th of the same month, the assignees filed a refunding bond in the penalty of $12,-000, and Krumbhaar another, in the penalty of $2828, being about double the amount of Mrs. Benner's legacy, for which the judg-

ment in the amicable suit was rendered. On the 22d of the same month, the assignees received from the executor the sum of $6353, to which they were entitled under their judgment; and Krumbhaar also received the sum of $1413, to which the Amelongs were entitled, for which sums, the plaintiffs in the two suits indorsed receipts on their respective refunding bonds.

It appears by the deposition of Frederick Amelong, taken in this cause, that the assignments by Benner to the Amelongs, although absolute in their terms, were intended to be for the use of Benner, and that the amount received of the executor by Krumbhaar, having been in due time remitted to the Amelongs, was with interest. after deducting commissions and expenses, paid over by them to Benner in August, 1810. This then is the case of an executor, who has once been compelled, by the judgment of a competent tribunal, after an honest and bona fide defence, with full notice to the counsel and attorney in fact of the adverse claimant, to pay the very money which is now demanded in this suit by the legal representatives of that adverse claimant. This is not all. That attorney, after claiming the sum now sought to be recovered, so far from interfering with the suit of the assignees by claiming to join in the defence of it, or by asserting in any other way the claim of his constituents, which at one time was set up, commenced a suit for only one of the legacies, and this too under an agreement with the adverse claimant, and a case stated between them, which was industriously confined to the share which the Amelongs had been informed by their counsel he was alone entitled to claim. And we find these two friendly adversaries marching side by side throughout the whole of these proceedings, giving refunding bonds on the same day for the legacies which they respectively claimed, and on the same day receiving satisfaction of those claims from the executor; each conusant (how is it possible they should not be so?) of what the other was doing, and of what the deluded executor, acting on the faith of a compromise agreed to by those who were originally adversaries in their claims, was doing. That he was paying away to the assignees the money once claimed by the Amelongs, but afterwards relinquished by their attorney, could not but have been known to that attorney. The receipt given to the executor by the counsel of the Amelongs, affords an additional, and almost conclusive proof of that fact; for in that he states, that the $1413 is the share of Mrs. Benner "of the balance of the executor's account as settled in the register's office, as referred to in the foregoing (the refunding) bond.". Upon referring to this settlement, it appears that on the 22d of November, 1809, the executor credits himself with $6353 paid the attorney of the as-

signees, $713 paid the attorney of Darr, and $1413, the balance, paid to the attorney of the Amelongs. What more could the executor have required, than that he should be placed in the same state of security in which the bill of the interpleader of which he had vainly endeavoured to avail himself, would have left him? But the adverse claimants did agree that the rights of the two parties were the same as though the question was raised in a suit by either party against the executor, or as if a bill of interpleader had been filed by the executor. Now, will any person contend that, if the rights of those parties had been decided either way, that the executor could afterwards have been called upon by the unsuccessful party to pay the money over again? We think it could not be so contended. Now, if it were admitted that this sum could be recovered again by the administrator of Benner at law, where is the plaintiff's case in equity? It is that of a man who, after abandoning, by a compromise, his claim to the money now sought to be recovered; then standing by and seeing a trustee innocently pay away that very money to the person with whom the compromise was made, and finally acquiescing in all these proceedings for ten or twelve years; asks a court of equity for a decree to compel this trustee to pay the money over again to him.

We think it quite unnecessary to pursue this inquiry further, and we shall therefore conclude this opinion by noticing some of the arguments which were relied upon in support of the relief prayed for by this bill.

1. It was contended, that Benner, not the Amelongs, was entitled to these legacies, as is proved by the deposition of one of the partners taken in this cause. If the inference intended to be deduced from this fact was, that Benner was not bound by what the Amelongs did. it is unfounded in law. The assignment to the Amelongs was absolute in form, and therefore put it in their power to appear. as in fact they did, as the real owner of the shares so assigned. If by doing so, a loss must be sustained by one of two persons, even allowing them to be equally innocent, he who occasioned the loss should bear it.

2. An attorney at law, it is said, cannot make a compromise to bind his client, and the case of Holker v. Parker, 7 Cranch [11 U. S.] 436, was relied upon for this doctrine. But upon examining the opinion delivered by the chief justice in that case, we find him saying, "that though an attorney at law, merely as such, has, strictly speaking, no right to make a compromise, yet a court would be disinclined to disturb one which was not so unreasonable in itself as to be exclaimed against by all, and to create an impression that the attorney's judgment had been imposed upon, or not fairly exercised." "Though it may assume the form of an

award or judgment at law, the injured party, if his own conduct has been perfectly blameless, ought to be relieved against it." What that court would have said in applying these principles to the case of a compromise made by an attorney in fact, as well as the attorney at law, fully and promptly communicated to his principal, who afterwards received the fruits of it, and who acquiesced for ten or twelve years in what had been done, we need be at no loss to conjecture. We say acquiesced in by his principal; for even if Benner, quoad the defendant, is to be considered as the real owner of those legacies, he received from the Amelongs the fruit of the compromise, nearly twelve years before this suit was brought. Upon the subject of acquiescence, see Pickering v. Lord Stamford, 2 Ves. Jr. 582; 1 P. Wms. 355.

3. It was contended that the defendant's intestate was guilty of laches, sufficient to charge him in equity, in not notifying the Amelongs of the action brought against him by the assignees. We by no means admit that, in a case like the present, notice was necessary, as it might be in a case of warranty, where the defendant intends, or has a right to look to a third person for compensation in case of a recovery against him. But if notice were necessary in this case to protect the executor, it was clearly dispensed with by the attorney of the Amelongs, who, being conusant of the adverse claim, at first opposed it, and afterwards withdrew from the contest, except as to the share which he sued for and recovered.

4. It was in the last place insisted, that after the opinion of the court was given in the amicable suit, by which the right of the Amelongs to the shares purchased by Benner was established, equally with their right to Mrs. Benner's share, it was the duty of the defendant's executor to have applied to the court for a new trial in the suit of the assignees, or if too late for that, for an injunction, or to have sued out a writ of error to the judgment. But had the Amelongs no remedy to prevent the assignees from receiving the fruit of their judgment? Could they not have filed a bill against the assignees and the executor to enjoin the judgment, and to obtain a decree for the amount of it to be paid over to them? No person will question the fitness of this remedy, unless indeed they had, by the compromise, defeated their own equity. Upon what pretence then can the plaintiff, who, or whose trustee, has been guilty of laches, attempt to build up an equity against the executor, by charging him with a similar fault? But why should the executor have attempted to set aside the judgment for the benefit of a party who had relinquished his claim to the subject in controversy, and who still declined to take any step to re-assert it? We think it will not be an easy matter to answer this question.

We are upon the whole of opinion that this bill ought to be dismissed.