## BALL v. THE BANK OF THE STATE OF ALABAMA.

1. Where the Cashier of a Bank in Alabama, which was the holder of a bill payable in New-Orleans, testified that the bill at the time of maturity, was at the place of payment; that in due course of mail thereafter, he received a package containing a large number of protests; that he had no distinct recollection of the one in question, but does not doubt it was regularly received, and that notices were enclosed, enveloped, addressed and mailed to the drawer and indorsers on the same day, as such was his constant practice; if he had received the protest under circumstances indicating that it had not been transmitted from New Orleans in due season, it would have been noted according to the invariable mode of doing business in Bank: *Held,* that the refusal to instruct the jury that the evidence of the cashier was insufficient to charge the indorser with notice of the dishonor of the bill, was not an error; and that the evidence was such as might well have been left to the jury to determine its effect.

2. If a Bank, which is advancing upon cotton, to be shipped through its agents to distant points, in order to place itself in funds there, stipulates with a shipper to pay him two per cent. for exchange upon the nett amount of sales at a designated place, the fluctuation in the price of exchange between the time when the contract was entered into and the cotton sold, can have no effect upon the rights and liability of either party.

3. Where a party offers a witness who will be liable over, if he is unsuccessful, he cannot divest the witnesses interest, and make him competent, by depositing with the clerk a sum of money equal to what would be the amount of the recovery against him. The common law or statute, neither confer upon the clerk of a Court, *virtute officii,* the authority to receive money which may be recovered upon a suit afterwards to be brought; and such payment cannot be pleaded in bar of an action.

4. An attorney at law cannot, in virtue of his retention (by a release, or the deposit of money which will operate as a release; if at all,) remit a liability which his client may enforce, for the purpose of removing the interest of a witness, so as to make him competent to testify.

5. Where a Bank, which was making advances upon cotton, stipulated with a shipper of that article that he should ship only to the agents of the Bank, who were to sell, &c., the stipulation made the agents of the Bank, *pro re nata,* agents of the shipper, and an account of sales duly furnished by such agents to their principal, is evidence against the shipper.

Writ of Error to the County Court of Tuskaloosa.

THIS was a proceeding by notice and motion, under the statute, at the suit of the defendant in error, against the plaintiff, as the indorser of a bill of exchange. The cause was tried on issues joined, on the pleas of *non assumpsit*, payment, and set off; a verdict was returned for the plaintiff, for five hundred and seventy dollars and twenty-five cents, damages, and judgment was rendered accordingly. On the trial, the defendant excepted to the ruling of the Court. It appears from the bill of exceptions that the plaintiff offered and read to the jury the bill of exchange described in the notice, together with the protest thereof for non-payment, duly made in the city of New-Orleans, where it was payable. To show that the defendant below had due notice of the dishonor of the bill, the plaintiff introduced as a witness the assistant cashier of the Bank, who testified that in March, 1840, at the maturity of the bill, and for some time before and after, he was acting in that character. In that month, a large package of notices of protest, viz, a hundred or more, were received and handed to him by the cashier. It was the duty of the witness to give the notices the proper address, or deposit them in the post-office, which duty he performed on the same day they were handed to him; he had no recollection of the notice of protest in this case, but from the course of business in the Bank, he had no doubt that the notice was received, and properly directed and deposited in the post-office. The defendant then resided in Mobile. Notices of protest of bills were received by the cashier through the mail, and handed immediately to the witness, who directed them to the proper persons, and deposited in the post-office on the day he received them.

The plaintiff then introduced its cashier as a witness, who stated that he held his present office when the bill matured, and holds it up to this time, and that the course of business in Bank was such as his assistant had testified; that as stated by him, and at the time, a large package of notices of protest were received, *post marked* " New Orleans." Witness could not remember whether the envelope had any thing written inside, or not, he was not in the habit of preserving such envelopes, supposed it was lost, but had made no search. Witness had no recollection of the notice of protest in this case; that he immediately handed the notices received to his assistant, whose duty it was to direct and forward them through the mail. From the course of business in

Bank he had no doubt the notice in this case was received; letters from New-Orleans were received in due course of mail in six or eight days from the time they were mailed. Witness had no recollection when the letter containing the notices spoken of was mailed—could not say that it was put into the post office before the leaving of the first mail after protest, or at what time.

The defendant then offered in evidence an agreement between the plaintiff and the drawer of the bill in question, as follows :

" Article 1. The receipt of a responsible warehouse keeper shall accompany the bill. Art. 2. All cotton will be shipped only to the agents of this Bank. Art. 3. The cotton shall in all cases be shipped on account and risk of the owner. The Bank will claim the right of insuring against the dangers of the river and fire. Art. 4. The cotton must be sold within thirty days after its arrival in the port of destination, and by or before the maturity of the bill. All expenses paid by the owner of the cotton. Art. 5. Interest will be refunded from the date of sale of any cotton to the maturity of the bill. Art. 6. If any lot of cotton netts more than the indebtedness of the party shipping, the Bank will refund the surplus, on application, as soon as an account of sales are received. Art. 7. Two per cent. exchange will be allowed to shippers of cotton on the nett amount of sales, if sold in New-Orleans or New-York. Art. 8. Interest will be charged on freights advanced prior to the sale of the cotton. Art. 9. The board will advance on cotton to be sold in Mobile, when the party taking such an advance will apply the total amount of such advance to the payment of debts previously due the institution.

The board of directors have purchased of P. P. Brown a bill of exchange for sixteen hundred and forty seven dollars, payable at the Bank of Louisiana, New-Orleans, on the 1st-4th March, and holds as collateral security a cotton receipt for forty-eight bales of cotton, to be shipped to New-Orleans, agreeable to the above regulations."

This writing was subscribed by the respective parties to it, and appears to have been made at Tuskaloosa, on the 7th January, 1840.

The defendant proved by the individual who was cashier at the time, the agreement set out above was entered into, and that the bill in question was that to which the agreement refers ; that the amount advanced on it was only two-thirds the estimated value

of the cotton; this was done that the bill might be fully paid with the proceeds of the cotton. In such case, it was the understanding between the Bank and the shipper, that if the cotton was not sold before the maturity of the bill, no damages should be charged on its protest. Exchange on cotton during the season, when the transaction in question took place, ranged from twelve to seventeen and a quarter per cent.; the average was about fourteen. Messrs. Marr, Brown & Co. were the agents of the Bank, to whom, cotton shipped to New-Orleans for sale, was consigned.

Brown, of the house of Brown, Marr & Co., was then offered as a witness, to prove that the cotton to which the agreement referred, was shipped to that firm, at New-Orleans, was received and sold on account of the Bank, and the proceeds paid over. Plaintiff objected to this witness, because he was the drawer of the bill. The objection was sustained, and the witness rejected; thereupon, the plaintiff excepted. The defendant not being present in Court, his counsel offered to pay into Court, a sum sufficient to cover the costs, so as to discharge any claim which defendant might have against the witness, if a judgment was recovered in this cause, and again offered the witness, but he was excluded, and the defendant again excepted.

Plaintiff then offered an account of sales of forty-eight bales of cotton, sold for account and risk of Mr. P. P. Brown, the proceeds of which were subject to the order of the State Bank of Alabama. This account is dated the 30th May, 1840, and is signed by Messrs. Kirkman, Abernathy & Hanna, who appear to have acted as factors in the sale of the cotton. The hand-writing of Messrs. K. A. & H. was proved, and it was also shown that they were agents for the Bank. To the reading of the account the defendant objected, because it was the act of the plaintiff's agent, but the objection was overruled, the paper read, and the defendant excepted. The plaintiff then proved that the paper was received as the account of sales of the cotton to which the agreement related.

The defendant prayed the Court to charge the jury, that the testimony of the cashier and his assistant was no evidence that the notice of the protest of the bill was deposited in the post office in New-Orleans in time to be forwarded by the first practicable mail after its dishonor. *Further*, if they believed from the

75

evidence that the exchange between Tuskaloosa and New-Orleans, at the time the cotton was sold, was more than two per cent., the defendant was entitled to the benefit of it. These charges were both refused by the Court.

The presiding Judge, before sealing the bill of exceptions, added in substance, the following, viz : The cashier, in answer to defendant's counsel, if he knew whether the protest was put into the post-office at New-Orleans, previous to the departure of the first mail, said, that he could not state positively. But whenever the notices of protest did not come in proper time, in due course of mail to fix the liability of the parties, the Bank looked to their agent for the losses sustained thereby ; from the fact that there were few cases of loss, and this not one of them, he had no doubt from the course of business in the Bank that the notice in this case was received in due time after protest. In respect to the first charge prayed, the Court did instruct the jury that as the witnesses were in Tuskaloosa, they did not, nor could not swear that the notice was put into the post-office in New-Orleans the first mail after protest. But it would be well to ask themselves how it could get to Tuskaloosa in time to fix the liability of the parties to the bill unless it had been duly mailed in New-Orleans, if they believed the cashier so testified. That the time when the notice was deposited in the post-office might be shown by positive proof, or by facts and circumstances ; but the evidence must satisfy their minds that the notice was put into the post-office at New-Orleans for the first mail after the protest. Another witness testified that the bill was only to be protested to fix the liability of the parties, that by agreement no damages were to be charged.

E. W. Peck and L. Clark, for the plaintiff in error, made the following points :

1. A release by the defendant, of P. P. Brown from the payment of costs, would have been sufficient, and the deposit of a sum of money equal to the costs, and to pay it if plaintiff was successful, would have the same effect, even in the case of an accommodation indorser.

2. The record does not show that the defendant was not an indorser for value ; and if he was not, it required no

Ball v. The Bank of the State of Alabama.

release in order to make the drawer of the bill a competent witness. [4 Ala. Rep. 637; 5 Ala. Rep. 196.]

3. The shipper of the cotton was entitled to the exchange, even if it were more than two per cent., because it was received not in payment, but as collateral security for the bill.

4. The testimony as to the sufficiency of the notice, raised a question of law, and nothing being proved from which the jury could reasonably infer that notice was given, the Court should have instructed the jury, that though they believed all that the witnesses stated, yet the evidence was insufficient to have charged the defendant. [Chitty on Bills, 509–515; 9 Peters' Rep. 33; 4 Wash. Rep. 404; 8 Pick. Rep. 51; 9 Id. 567.]

5. The plaintiffs below could not have offered the account of sales as evidence in their favor, because the factors who sold the cotton was their agents. [2 Stew. & P. Rep. 338; 4 Wash. Rep. 465.]

B. F. PORTER, for the defendant in error, insisted,

1. That Brown was not a competent witness, for if the defendant was cast in the suit, the record would be evidence against him. He was offered to prove a payment, and a verdict upon that issue would bar a recovery against him. [2 Phil. Ev. C. & H's notes, 133; 14 Mass. Rep. 312.]

2. The account of sales, was, under the circumstances, properly received in evidence. [2 Stew. & Por. Rep. 339.]

3. The charge of the Court is free from objection; it determines no question of fact, states the law, and refers it to the jury to say what has been proved.

COLLIER, C. J.—1. We think it entirely clear, that the Court very properly refused to charge the jury, that the testimony of the Cashier and his assistant was no evidence, that the notice of the protest of the bill was deposited in the post office in N. Orleans, in time to be forwarded by the first mail after its dishonor. True, these witnesses could not testify that the notice was thus mailed, because they were, at the time of the protest, some hundreds of miles distant from New Orleans; but the facts they state are quite convincing, and inconsistent with the idea that notice was not duly received by the plaintiff, and addressed and mailed in due season by its assistant cashier to the defendant. The manner of

doing business by the Bank, and the absence of any memoranda by the Cashier, showing irregularity in the receipt of the notice, raise a presumption sufficiently strong to sustain a verdict against the defendant. In Carson v. The Bank of the State of Alabama, 4 Ala. Rep. 148, it was held, that the jury would be warranted in inferring a notice of the dishonor of a bill was regularly given.

2. The agreement under which Brown shipped his cotton through the Bank to New Orleans, does not entitle him to the difference of exchange between Alabama Bank paper and par funds at the time the bill matured. It is expressly provided by the seventh article of the agreement, that two per cent. exchange shall be allowed, on the nett amount of the sale, if it be made in New Orleans or New York. This stipulation is not controlled by the fluctuation in the price of exchange, but the drawer of the bill is entitled to the benefit of it, though the paper currency of Alabama might have appreciated so as to be equivalent to gold and silver. And on the other hand, the Bank is entitled to retain a sufficiency of the proceeds of the cotton to extinguish the bill, without allowing more than two per cent. for exchange, though its paper may have greatly depreciated after the purchase, and before the maturity of the bill. The rate of exchange between different places is subject to all the vicissitudes of commerce, and any contract for the payment of a fixed per cent. at a future day, must at best be hazardous. This being the case, the seventh article of the agreement is not obnoxious to the laws against usury, or any rule of policy; and must therefore be supported. *Conventio vincit dat legem.*

3. Mr. Greenleaf, in his treatise on evidence, lays it down generally, that the surety or bail may be made a competent witness for his principal, by depositing in Court a sufficient sum of money to cover his liability, [p. 477.] And such would seem to have been the decision in Bailey v. Hole, 3 C. & P. 560; Pearcy v. Fleming, 5 C. & P. Rep. 503; see also, 1 Mood. & M. Rep. 289. In Allen v Hawks, 13 Pick. Rep. 79, it was held, that where goods attached are returned to the defendant, upon a receipt given by a third person, stating the value of the goods and promising to deliver them to the officer in case the plaintiff should recover, the competency of the receiptor to testify in the suit may be restored by placing in his hands a sum of money equal to the

whole amount for which he can by possibility, be liable on his receipt. To the same effect are Hall v. Baylies, 15 Pick. Rep. 51, and Beckley v. Freeman. Id.; see also, Roberts v. Adams, 9 Greenl. Rep. 9 ; Chaffee v. Thomas, 7 Cow. Rep. 358 ; Collins v. McCrummen, 3 Martin's Rep. N. S. 166-9.

In Meeker's assignees v. Williamson, 8 Martin's R. 365, 370, it was adjudged, that if a party interested only on account of costs, deposit, or offer to deposit with the clerk, such sum as shall be directed by the Court, to cover the costs, *in case he shall be decreed to pay any*, his interest will not be thereby removed.

In some of the cases cited, the money was placed in the hands of the party offered as a witness. This was clearly sufficient to neutralize the interest which would otherwise have rendered him incompetent ; for if the witness should be charged, he would have the means of payment provided, by which he might relieve himself, and if his liability should not be fixed, he could refund the money deposited with him. So that it would be unimportant to him, whether the one party or the other was successful in the cause. In the other cases a sum of money equal to the immediate, or consequential liability of the witness was deposited with the proper officer of the Court, and this it was held was equivalent in law to a release. If it is competent for a Court to make its clerk the keeper and custodian of money paid under such circumstances, and such payment will satisfy a judgment to be rendered in a suit afterwards to be brought, then it is difficult to conceive of any objection to thus making an interested witness competent to testify. We will briefly consider what are the duties and powers of a clerk in this respect.

The act of 1812 declares, that every clerk shall enter into bond conditioned, (among other things,) "for the due and faithful execution of his office," [Clay's Dig. 143, § 2 ;] and the bond provided by the act of 1819, is conditioned " for the faithful discharge of the duties of their offices." [Id. § 3.] By the 5th section of the act of 1834, " to provide a more summary mode of collecting money from clerks," [Clay's Dig. 147, § 24,] it is enacted, that in all cases where money shall be paid to the clerk of any Court, the party entitled to receive it, shall have the same remedy for its recovery, and the same damages for its detention, as are now provided and allowed by law, for money paid to clerks on execution, and it is hereby expressly made the duty of all clerks to re-

ceive and account for all such sums of money as may be paid to them by either party, as well after as before the issuance of the execution." A summary remedy by notice and motion for the failure or refusal to pay over money collected or received on execution, is provided by law. [Clay's Dig. 218, § 83; 329, § 94.]

In respect to the act of 1834, it has been decided, that money paid to the clerk of a Court, in satisfaction of a judgment which has been rendered therein, will be a good payment, and will authorise the entry of satisfaction *pro tanto.* [Murray v. Charles, 5 Ala. Rep. 678.] So it has been decided that our statutes relating to the powers and duties of clerks, do not authorize a clerk to receive money in a cause pending and undetermined in his Court. But independent of statutory enactment, it was said, " no case is remembered in which money can be lawfully paid to the clerk in vacation, or in any other manner than as the officer of the Court, in term time, and the receipt of which is always shown by some record of the Court, or some proceeding yet on paper, but progressing to a record." *Again,* " There are several stages in the proceedings of a case, in which the clerk of a Court is by law authorized to be the holder of the money which may be paid into Court. Thus on plea pleaded, when the cause of action is admitted to a partial extent, and denied as to the residue. So in the case of a tender—so also, when money is paid into Court in satisfaction of a judgment." In these cases, the money is, in legal presumption, in Court, and the clerk holds it merely as a fiduciary. [Currie v. Thomas, 8 Porter's Rep. 293.]

It is clear, that in virtue of our statutes the clerk of a Court has no authority to receive money in discharge of an action which is pending, or probably to be brought in future ; and we think the common law does not confer the power in the case now before us. The deposit of a sum equal to the costs to which the witness would be liable to the defendant in the event of the plaintiff's success, if made by the defendant himself, might operate as a release of the costs, and bar a recovery of them by him. But is it competent for an attorney at law, when retained for the purpose of defending a suit, to release from liability to his client a third person whom it is proposed to examine as a witness for him. An attorney has power to bind his client by many acts, being always liable to him for any abuse of his authority. [Alton v. Gilmanton, 2 New Hamp. Rep. 520 ; Mayer v. Foulkrod, 4

Ball v. The Bank of the State of Alabama.

Wash. C. C. Rep. 503.] Thus he may waive the right of appeal. [Pike v. Emerson, 5 New Hamp. Rep. 393; Haskell v. Whitney, 16 Mass. Rep. 396.] So it has been held he may submit a cause to arbitration—[Holker, et al. v. Parker, 7 Cranch's Rep. 436: Talbot v. Magee, et al. 4 Monr. Rep. 375,]—may discontinue a suit—[Gaillard, et al. v. Smart, 6 Cow. Rep. 386]—after judgment may receive payment—[Branch v. Beatly, et al. 1 Call. Rep 127]—but he cannot assign the judgment without a special authority—Walden v. Grant, et al. 20 Martin's Rep. 565] —nor discharge a debtor by receiving a less sum than was due, or commute a debt by receiving something else than money. [Lewis v. Gamage, et al. 1 Pick. Rep. 347; Smock v Dade, 4 Rand. Rep. 639; see also, 5 Stew. & P. Rep. 34, 354; 1 Porter's Rep. 212.]

In Murray v. House, 11 John. Rep. 518, the plaintiff's attorney, in order to make an interested witness competent for his client, released him, and he was permitted by the primary Court to give evidence; but the appellate Court held, that a *parol* request to an attorney to represent a party to a suit, does not authorize him to release the interest of a witness. So in Marshall v. Nagel, 1 Bailey's Rep. 308, it was determined that an attorney cannot, without special authority, release a witness who is liable over to his client, and thus render him competent to testify.

The cases which maintain the want of authority in an attorney to release a witness from liability to his client, are perhaps defensible upon the ground that the attorney's appointment is by *parol* merely, and a release which is under seal, must be authorized by an instrument of equal dignity. But they might be rested upon higher ground, viz: the want of power generally. In retaining counsel for the prosecution or defence of a suit, the right to do many acts in respect to the cause, are embraced as ancillary, or incidental to the general authority conferred. It cannot be implied from the power to defend one suit, that the right to discharge other liabilities, which the client may enforce, are also vested in the attorney. It cannot vary the principle, whether these liabilities be for a large or small sum; for costs, or for monies due under an express contract. In neither case does the nature of the employment embrace the authority in question as an incident.

Laying out of view the want of a *sealed* authority, we have

seen that an attorney cannot remit a liability which his client might enforce, for the purpose of removing the interest of a witness. In such case the client's consent is necessary to the validity of the act. How then can the attorney discharge the liability of the witness by the deposit of a sum of money equal thereto? The payment to the clerk will not bar a recovery by the client, though if he pay it over, he may extinguish the judgment *pro tanto*. The interest of the witness then, still continues, though the clerk may be ultimately responsible to him. He must provide the means of payment, so far as the defendant is concerned, and this is quite enough to show his incompetency to testify; for the liability of the clerk may prove unproductive, and if it be such as his sureties are not bound to make good, the indemnity of the witness will of course be less likely to be realized. From this view it results, that the Circuit Court rightly excluded Brown as a witness, upon the propositions of the defendant's counsel. We have considered the case upon the hypothesis, that the defendant was an accommodation indorser, and that the drawer of the bill would be liable to refund to him the costs of the suit, if he was unsuccessful. [The Com. Bank of Columbus v. Whitehead, 4 Ala. Rep. 637.] The facts recited in the bill of exceptions very clearly show, that the defendant and Brown occupied that relation to each other.

4. The second article of the agreement under which the plaintiffs were permitted to control the cotton and receive the proceeds, provides that it should be " shipped only to the agents of the Bank." This stipulation made the agents of the Bank *pro re nata* agents of the drawer of the bill, for whose benefit the shipment was made, to the same extent as if they had been designated by name, although the contract between the shipper and the Bank authorized the latter to select the factors, and call them to an account.

In Black v. Richards, 2 Stewart & P. Rep. 338, the defendant set up as a defence that he had made an agreement with the plaintiff, by which the latter was to ship the defendant's cotton to the house of B. B. & R. of New Orleans, and that he had violated the agreement in consigning it to himself. To show that the cotton had been shipped according to contract, and to prove the amount of sales, the plaintiff offered an account of sales from the house of B. B. & R.; but it was objected to as " secondary evidence," and

excluded from the jury. This Court held, that if the contract were such as the defendant insisted, then he made Messrs. B. B. & R. his agents, and the account of sales made out by them was evidence to show that the plaintiff had performed his undertaking. The fact that an individual is the agent of one of the parties, subject to his direction and control, does not necessarily prevent him from being considered as the agent of the other. Thus in an action by a Bank against a depositor who has overdrawn, the books of the Bank were received to show receipts and payments of money—the officers being so far the agents of both parties. [Union Bank v. Knapp, 3 Pick. Rep. 96.] It is too well settled to be questioned, that the declarations of an agent, while acting and speaking for the principal, and within the scope of his authority, are admissible in evidence against the principal, notwithstanding he is a competent witness. [Boring v. Clarke, 19 Pick. Rep. 220 ; 2 Phil. Ev, 180 to 185, 189, 190, 684, C. & H.'s notes.] The evidence adduced shows, that Messrs. Kirkman, Abernathy & Hanna were the agents for the plaintiff for the sale of cotton in New Orleans; that the drawer of the bill stipulated with the plaintiff, that the cotton in question should be sold by the agents of the latter, and this was sufficient to have authorized the admission of the account of sales as against the drawer. And as the defendant, an accommodation indorser, set up in his defence the agreement between the Bank and the drawer of the bill, it was competent for the plaintiff to show he had performed it, by such evidence as was admissible against the drawer.

This view disposes of all the questions raised upon the record, and the result is, that the judgment must be affirmed.