# Age-Herald Publishing Co. *v.* Waterman.

## *Libel.*

(Decided May 22, 1913.  Rehearing denied June 30, 1914.
66 South. 16.)

1. *Appeal and Error; Harmless Error; Pleading.*—The elimination by plaintiff of counts of the complaint rendered harmless to defendant any errors committed in rulings as to such counts.

2. *Limitation of Action; Pleading; Amendment.*—An amendment to the complaint setting up a republication of the libelous action by other newspapers, and charging that they were induced or caused by defendant, states a different cause of action, and being filed more than a year after the publication, was expressly barred by section 4840, Code 1907.

3. *Libel and Slander; Pleading; Amendment.*—It was compentent for plaintiff to amend his complaint so as to allege his business or profession by way of inductment.

4. *Same; Colloquium.*—Where the words set out in the complaint for libel are not actionable per se, the complaint must allege facts to show the sense in which the language was used, etc.

5. *Same.*—Matters of inducement or colloquim averred by way of introduction must be facts, and not mere statements, arguments or conclusions, showing that the words in question are actionable.

6. *Same; Innuendo.*—In an action for libel the office of the innuendo is to explain the subject matter, and if the language averred to have been used does not itself constitute a libel, no words contained in the innuendo can make it actionable.

7. *Same.*—In a complaint for libel, an innuendo means the same as "id est," "scilicet," or "aforesaid," being merely explanatory of the subject matter sufficiently expressed before.

8. *Same.*—In an action for libel, facts alleged as inducements or colloquia are traversable, and must be proven, while the innuendo is not traversable, and hence, need not be proven.

9. *Same; Complaint; Words Actionable.*—The complaint examined and held to state a cause of action.

10. *Same; By Others.*—Every repetition of a slander, or the publication thereof by a newspaper is a republication, rendering each person so repeating or republishing liable. as well as the initial one.

11. *Same.*—The initial slanderer or libeller is not responsible in an action of slander or libel, for such repetitions and republications of the slander and libel.

12. *Same.*—It was error to instruct the jury that under the law of Alabama, this defendant is responsible for the publication of any

libel which may result in actionable injury, as such instruction authorizes a recovery for publication made by other newspapers.

13. *Same; Evidence.*—Evidence that the alleged libelous article was republished by other newspapers, was not admissible, nor was it rendered so because the reporter who reported for defendant also reported for the other papers.

14. *Same.*—A repetition by a defendant of the libelous word is admissible as evidence of malice, and in aggravation of damages.

15. *Same; Instructions.*—Where there were special pleas alleging that the matter was privileged, and there was evidence to support them, it was error to instruct the jury to find for plaintiff if the jury were reasonably satisfied that plaintiff had been injured in the manner averred in the complaint.

Appeal from Jefferson Circuit Court.

Heard before Hon. E. C. Crowe.

Action by John B. Waterman against the Age-Herald Publishing Company for libel. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Count 2 is as follows:

Plaintiff claims of defendant the sum of $30,000 damages for false and maliciously publishing of and concerning plaintiff in a newspaper published in Birmingham, Jefferson county, Ala., called the Birmingham Age-Herald, on, to wit, the 28th day of May, 1910, with intent to defame plaintiff, a statement in substance as hereinafter set out, the same having reference to the bankruptcy and failure of a partnership known as Knight, Yancey & Co., which was alleged to have issued and disposed of a vast amount of spurious and fraudulent bills of lading, said publication being in part as follows: "In answer to a question as to whether Mr. Knight implicated others in the criminal knowledge relative to false bills of lading, the witness said: 'Knight intimated to me that others knew of the fake bills of lading. His intimations were not sufficiently distinct for me to even hazard a guess as to whom he referred. I then told him to shut up as I did not care to hear any more about it. I simply wished to know how bad we

18—188

were stuck and then get remedies, to which the creditors were justly entitled.' Mr. Nesbitt was closely questioned by Mr. Benners in regard to a loan of $5,000 which was made to a Mr. Waterman, agent for a Mobile steamship line. It developed that the general belief is that Waterman is abroad and odes not intend to return. Mr. Nesbitt said he knew Waterman, and did not know a loan was made by him to Knight, Yancey & Co. Mr. Nesbitt, however, qualified his statement by adding that he presumed that it was simply a personal act between Mr. Knight and Mr. Waterman. 'Did Mr. Knight mention this loan to you?' was the question asked by Mr. Benners. 'He did,' said Mr. Nesbitt. 'He also told me that the mention of the loan publicly would reflect upon Mr. Waterman.' 'What did he mean by the reflection?' 'I do not know,' answered the witness. The information was disclosed that several large shipments of cotton had been made by the way of the line represented by Waterman. It is also brought to light that several spurious bills of lading are held upon which cotton was supposed to have been routed via the lines represented by Waterman."

Addenda to Count 2.—And plaintiff avers that at the time of said publication and for many years prior thereto, plaintiff's business was, and has been that of freight and shipping agent, contractor or representative in Mobile, Alabama; and that plaintiff then resided in Mobile, intending to continue his business at that point; and that at the time of said publication plaintiff had well nigh concluded the organization of a shipping company with excellent connection for the handling of cotton, and with headquarters in Mobile, Alabama; that the failure of Knight, Yancey & Co., one of the largest Southern cotton concerns, under circumstances which were alleged to have disclosed fraud in the matter of false or fraudulent bills of lading, occasioned intense interest and feel-

ing in the cotton trade in America and abroad, and aroused general resentment and indignation towards those who might be considered responsible or connected with the alleged irregularity; and plaintiff avers that the publication of and concerning plaintiff herein complained of in direct connection with said fraudulent transaction and having reference to plaintiff's business, his finances and intentions to abandon his residence, and place of business in Mobile, Alabama, and published during the investigation of said failure (the Knight and Nesbitt referred to in said publication being members of the said firm of Knight, Yancey & Co.,) conveyed the false meaning and question that plaintiff was dishonorably connected with said fraudulent practices, or was a fugitive or had abandoned his domicile, or had absented himself by reason of the matters published, and thereby directly and proximately cast suspicion upon plaintiff on the part of the cotton trade, brought him into public contempt, and injured plaintiff in his said business and calling, and in his reputation, credit and good name, and caused him to suffer great mental pain, anguish and mortification, etc.

Plaintiff avers that the statements, insinuations, and implications contained in said article meaning and implying, among other things, that plaintiff was fugitive, or had concealed or absented himself by reason of the matters referred to in said statement, or was evading a responsibility, debt, or obligation, or had dishonorable connection with said Knight, Yancey & Co., were false, malicious, and libelous; and plaintiff avers that said items published as aforesaid were given large circulation by defendant throughout the state of Alabama and elsewhere, and as a proximate consequence thereof plaintiff was injured in his good name and in his business of shipping agent and reputation, and was caused

to suffer mental pain and anguish, and was caused to be deprived of the opportunity of completing profitable and honorable business connections with the organization of a Mobile steamship company at a handsome salary, and with a reasonable prospect of realizing large returns.

NATHAN L. MILLER, and NEEDHAM A. GRAHAM, JR., for appellant. The depositions were taken without reasonable notice, some without notice at all to the defendant, and should have been suppressed.—§ 4032, Code 1917; Acts 1911, p. 487; *Montgomery St. Ry. v. Mason*, 133 Ala. 508. The court erred in allowing plaintiff to amend its complaint by the addition of counts 2, 3 and 4, the two latter counts being based on a republication of the alleged libel by other newspapers.—25 Cyc. 506; Newell, Slander & Libel, 350; *Hereford v. Coombs*, 126 Ala. 369; 154 Mass. 238. They were also a departure from the original cause of action.—*Ivey Coal Co., v. Long*, 139 Ala. 563; *Ala. C. C. Co. v. Watson*, 158 Ala. 166. They were also barred by the statute of limitations for one year.—§ 4840, Code 1907, and authorities cited; 25 Cyc. 471. The office of an innuendo is to select and apply to ambiguous words the sense in which they were used and understood, but not to enlarge the meaning of the words beyond their natural sense.—*Gaither v. Advertiser Co.*, 102 Ala. 458; *Labor Rev. Pub. Co. v. Galliher*, 153 Ala. 164; *Henderson v. Hale*, Ala. 19 Ala. 154; *Trimble v. Anderson*, 79 Ala. 515. The words complained of were not reasonably and fairly susceptible of the meaning ascribed by plaintiff, or of any such meaning. —Authorities supra, and *Henry v. Dozier*, 161 Ala. 292; Collien on Bankruptcy, 189, 315. Neither are the words described in count 2 libellous per se, and in the absense of special damages they impose no liability. Defendant can only be held liable for damages occasioned by its

own publication, and it was error to admit evidence tending to prove that such publication was copied and republished in other papers.—Authorities supra.

CAMPBELL & JOHNSON, for appellee. The only count submitted to the jury was the second count, and no error can be predicated as to rulings on the counts which were withdrawn by plaintiff.—214 U. S. 185. This authority and the authorities therein cited settle adversely to appellant's contention all matters insisted upon on the merits of the case. There was no error in refusing to strike interrogatories.—*Wisdom v. Reeves.* 110 Ala. 418; *Nat. F. Co. v. Holland,* 107 Ala. 412.

MAYFIELD, J.—The action is libel. The libel alleged was the publication of what purported to be a report of the proceedings had in a bankruptcy court, before a referee in bankruptcy, in the matter of Knight, Yancey & Co., engaged in the business of buying and selling cotton. The bankrupt was supposed to have issued and disposed of a vast amount of spurious and fraudulent bills of lading.

The plaintiff was not a member of the partnership of Knight, Yancey & Co., but only had dealings with it in the cotton business, and seems to have been on friendly relations with some members of the firm.

The reporter will set out count 2 of the complaint, which contains the alleged libelous publication in hæc verba; such publication being made to appear to be a part of the newspaper report of the proceedings in the bankrupt court.

The were quite a number of counts added to the complaint by amendment, one of which was count 2, ordered to be set out, on which alone the case was submitted to the jury. The other counts were all eliminated by re-

quest of plaintiff, which elimination, of course, could work no injury to the defendant, and rendered perfectly harmless any possible errors committed in rulings as to the eliminated counts, but not necessarily such as inhered in rulings as to the admission of evidence as will be hereafter shown.

All counts related to publication of the same matter or parts of the reports of the proceedings in the bankrupt court, but some of these counts set up a different publication of this matter—that is, a subsequent publication of the same matter in other newspapers than that of the defendant, to wit, the Memphis Commercial-Appeal, a newspaper published in Menphis, Tenn.—with approproate allegations that these publications were induced or caused by the defendant. Some of these counts were added more than a year after the publication, and as to such counts the defendant interposed the plea of the statute of limitations of one year.

Actions of libel and slander are in terms, by our statute (Code, § 4840), limited to one year. So the question is: Did these amended counts, filed after a year, state a new and different cause of action, or the same cause of action, but in language varying from that stated in the original complaint, which was filed within a year? If they stated a different cause of action, such action was barred when the amendment was filed; if the same cause of action, in varying language, then it was not barred.

The rule is thus stated in Cyc. (volume 25, p. 436) : "Every distinct publication of libelous or slanderous matter gives rise to a separate cause of action, although several causes of action for different libels or slanders may be united in the same action. But it has been held that slanderous words spoken at one time constitute one cause of action, and the same or other slanderous words spoken at other times constitute other causes of action,

and if relied upon they should be separately pleaded in separate counts or paragraphs."

Mr. Newell (Def. Lib. & Slan. p. 350) states the rule as follows: "It is well settled that every utterance of slanderous words is a distinct cause of action, and, if recovery is sought for repeating a slander, the repetition must be declared upon as a separate cause of action. The mere general allegation of the repetition of the slander is but pleading evidence which is admissible without pleading, for under a single count the plaintiff may show repetitions, not for the purpose of sustaining the action, but for the purpose of showing malice in the speaking of the words declared upon, thereby aggravating the damages. And where the alleged cause of action is barred by the statute of limitations, it cannot be claimed by the plaintiff that, because the alleged defamatory words were repeated at various times up to the commencement of the suit, the statute of limitations has no application."

It would therefore seem that these counts, setting up republications in other papers, stated different causes of action from that contained in the original complaint; and, if filed more than a year after the publication, they were barred, and the plea of the statute of limitations of one year, as to such counts, was good. We say this for the benefit of the the trial court, and of the parties, in the event there is a new trial, as these counts were eliminated before the case was submitted to the jury.

There are a number of questions raised and discussed in briefs as to the sufficiency of the matters of colloquium, inducements, and innuendoes. The rules touching these have been often stated by this court and others, and by text-writers, and there is very little difference in the statements as to the necessity and sufficiency of such averments in action of libel and slander.

In actions for libel, it is often proper and sometimes necessary to allege, by way of inducement, the trade, profession, or business in which plaintiff was engaged at the time of the publication, and that he was so engaged at that time. Such allegations are called matters of inducement, and are proper and sometimes necessary to show that the matter alleged was libelous, and to support damages for injuries on account of such trade, profession, or business. This was a proper case for such allegations, and the trial court did not err in allowing amendments to the complaint, which added such matters of inducement.

Complaints or declarations must contain allegations to show that the words published or spoken were so published or spoken in reference to and concerning the plaintiff, and of and concerning distinct and independent facts, which show that the words were used, on the occasion alleged, in a particular sense, such as would render them actionable, although they might not be actionable if otherwise used. The law proceeds upon the theory that what is the ordinary meaning and nature and force of language is a question of law. And when the language or words used are set forth, the first question is whether or not the language, standing alone, imputes such a crime or offense as to be actionable per se. If the language is not per se actionable, then facts, as inducements and colloquia, must be alleged to show the sense in which the language was used, that it applied to the plaintiff, and that, as so applied, it is actionable by him. If the meaning and sense of the language is clearly actionable, the mere charge that it was used of and concerning the plaintiff is sifficient to state a cause of action; and the same is true if the language itself shows that it was used, and that it would naturally injure the plaintiff. If the language is am-

biguous in meaning or sense, and of and concerning whom and what it is so used, then the office of the colloquium is to make it certain as to these matters, and to show that, as used, it was actionable at the suit of the plaintiff.

Whatever circumstances are necessary to constitute the crime or offense imputed, or to show that the language used was actionable, must be alleged. If the words used are actionable per se, the matter of colloquium may tend to aggravate; but it is not necessary to state a good cause of action. Hence such matter may be proper when it is not necessary; but it is often necessary to the statement of a good cause of action.

As to matter of inducement and colloquium, the averments must be of facts and circumstances which, by way of introduction, show the words in question to be actionable, and not of mere statements arguments, conclusions, and inferences.

Matters of explanation are not treated strictly as averments of facts, but as more explanations of what was meant by the averments. This explanation, in complaints for libel and slander, is called the innuendo, which means the same as "id est," "scilicet," or "aforesaid." Its only office is to explain the subject-matter, which must have been sufficiently averred before, as such one, meaning the plaintiff, or such a subject, meaning the subject in question. If the matters going before the innuendo do not constitute libel or slander, no words contained in the innuendo can make the language used actionable, for it is not the nature or purpose of an innuendo to state the cause of action.

The matters constituting the inducement and the colloquium are traversable and must be proven; the innuendo is not traversable, and hence need not be proven. Verdicts are set aside, and judgments arrested, in libel and slander suits, for the reason that the pleader at-

tempted to make an innuendo serve as traversable matter in stating the cause of action, when it is at best merely explanatory of the traversable matter, the mere opinion of the pleader as to what it means.—*Bloss v. Tobey,* 2 Pick. (Mass.) 320; *Carter v. Andrews,* 16 Pick. (Mass.) 1.

In the first of the above cases, it is said in the opening sentence of the opinion: "It is with great regret, and not without much labor and research to avoid this result, that we are obliged to arrest the judgment in this case for want of a sufficient count to support the verdict."

Later on in the opinion the court says: "With respect to the manner of putting upon the record those facts and circumstances which tend to render the words actionable, * * * it must be by averments in opposition to argument and inference, by way of introduction if it is new matter, and by way of innuendo if it is only matter of explanation, for an innuendo means nothing more than the words 'id est,' 'scilicet,' or 'meaning,' or 'aforesaid,' as explanatory of a subject-matter sufficiently expressed before, as such a one, *meaning* the defendant, or such a subject, *meaning* the subject in question."

The opinion then quotes from *Barham's Case,* in Coke, which is cited in all the books in illustration of this doctrine: "*He has burnt my barn, meaning a barn full of corn,*" adding, "This is bad, because what comes in under the innuendo is an addition to, and not an explanation of, the words spoken."

In 16 Pick. (Mass.) 4, Chief Justice Shaw said: "If the words did in fact mean what it is thus intimated by way of innuendo that they did mean, they would be abundantly sufficient to support the action. But after the numerous discussions and decisions upon that subject, it is in vain now to contend that it is a good mode

of declaring to say that such words are used with such a meaning and leave it as an open question to the jury to determine upon the facts and circumstances whether the language was used with such a meaning or not. The case of *Bloss v. Tobey*, 2 Pick. (Mass.) 320, states the principle and the grounds on which it rests so fully that it cannot be necessary to repeat it. The rule is founded upon that important general principle that a plaintiff, to entitle himself to a judgment, must lay his case in such a mode as to enable the court to see, after verdict, that he has a good cause of action."

In illustrating the nature and necessity of a proper colloquium, when the words are not actionable per se, this same learned justice says: "The law will not shut its eyes to what the rest of the world can see and let the slanderer disguise his language and wrap up his meaning in ambiguous givings out, as he will; it shall not avail him, because courts will understand language in whatever form it is used, as all mankind understands it. This is a correct rule and must be regarded as a most sound and salutary one, to be acted upon by the court, and to be fully explained and enforced upon the trial of the facts before a jury. So language may be used ambiguously, or ironically, or technically, or conventionally. What are called cant terms and flash language are of the latter sort, where, among a particular class of persons, or by usage or convention, words are used in a particular sense. But, wherever this is a fact, it is in consequence of the existence of some usage or agreement, of some report in circulation, of the time, place, or manner in which the conversation was held, in short, of some fact capable of being averred in a traversable form, so that it may be put in issue and proved or disproved. If the words have the slanderous meaning alleged, not by their own intrinsic force, but by reason of the existence of

some extraneous fact, the plaintiff must undertake to prove that fact, and the defendant must be at liberty to disprove it. The fact then must be averred in a traversable form, with a proper colloquium."

This court, speaking through STONE, C. J., (*Gaither v. Advertiser Co.,* 102 Ala. 462, 14 South. 789), said:

" 'An innuendo may not introduce new matter, or enlarge the natural meaning of words. It must not put upon the defendant's words a construction which they will not bear. It cannot alter or extend the sense of the words, or make that certain which is in fact uncertain. * * * An innuendo cannot be proved. And it is for the judge to decide whether a publication is capable of the meaning ascribed to it by innuendo, and for the jury to decide whether such meaning is truly ascribed to it.'—13 Amer. & Eng. Encyc. of Law, 465-467. In other words, the court determines whether the words used are susceptible of the meaning sought to be given to them by the innuendo. If this inquiry is decided by the court against the contention of the pleader, this puts an end to it, for it is not permissible to make proof that the words employed were uttered in the sense or with the meaning imputed to them in the innuendo. That is not the subject of proof. If it be decided by the court that the words are susceptible of the meaning the innuendo seeks to ascribe to them, then it becomes a question for the jury to determine, under all the circumstances, whether they were intended to mean what the innuendo avers they did."

Count 2 of the complaint as amended, tested by these rules, is a good count; that is, it will support a verdict, was not shown to be bad by demurrer; but the original count is subject to the criticism that matter is stated in the innuendo which should have been stated as an inducement and colloquium, so as to make it traversable, and not merely explanatory.

As before stated, the trial court properly allowed the amendments alleging the plaintiff's trade, business, or profession, and matters of inquiry thereto. What was said in *Ware v. Clowney*, 24 Ala. 707, 710, is apt here, and we repeat it: " 'Words are actionable which directly tend to the prejudice of any one in his office, profession, trade, or business in any lawful employment by which he may gain his livelihood.'

"The authorities generally concur in upholding this action in three classes of cases which injuriously reflect upon the trade, profession, or business of an individual, namely: First, when the words charge the person with a want of fidelity in his trade or profession generally; second, where they charge such person with dishonesty, corruption, or want of integrity in a particular case; and, third, where the words impute ignorance or want of skill and capacity in general terms.—[*Foot v. Brown*] 8 John. (N. Y.) 66."

The rule as to the nature and sufficiency of statements as to special damages, as distinguished from those that are general, is well stated by Mr. Newell, in his work on Defamation, Slander & Libel, p. 634. It is there said: "Special damages are such as in fact have actually occured as the result or consequence of the injury complained of, and not implied by law. They are either superadded to general damages arising from the act injurious in itself, as where some particular loss arises from the uttering of slanderous words actionable in themselves, or are such as arises from an act indifferent, and not actionable in itself, but injurious only in its consequences, as where words become actionable only by reason of special damage ensuing.

"Special damages must always be the legal and natural consequence arising from the defamation itself, and not a mere wrongful act of a third person. Whenever

[Age-Herald Publishing Co. v. Waterman.]

special damages are claimed, in order to prevent a surprise on the defendant, which might otherwise ensue at the trial, the law requires the plaintiff to state the particular damage which he has sustained, or he will not be permitted to give evidence of it at the trial."

The majority of the court hold that defendant's motion to suppress the depositions of the witnesses named therein, as shown on page 53 of the transcript, was properly overruled. The writer, however, dissents as to this proposition. The depositions were taken on interrogatories filed by the plaintiff on April 13, 1911, and cross-interrogatories filed by the defendant within ten days thereafter, and were taken on April 27th, 28th, and 29th. The defendant demanded notice of the time and place of taking such depositions, as is authorized by statute (Code, § 4032, as amended by the act of April 18, 1911 [Acts, pp. 487-489]). The majority are of the opinion that the record fails to show that this statute was of force at the date in question so as to be applicable to this case, and that if the statute applied, it was complied with as to notice.

Taking testimony in courts of law by deposition was not common, if known to law courts at common law, and hence statutes upon the subject must be strictly construed; and he who would avail himself of the benefits conferred by the statute must pursue the statute, at least in a substantial manner. The common law, in such courts, allowed the party to cross-examine the witness face to face, and in the presence of the jury. The statute authorizes the taking of testimony in the cases mentioned in the statute in the absence of the jury, but preserves the right of the adverse party to be present at the taking of the testimony, and to cross-examine the witness. In order that this may be preserved, the statute provides for notice to issue to the adverse party, or

to his attorney, of the place and the time for the taking of the testimony. This is to the end that, if such adverse party so desires, he or his counsel may be present and face the witness at the taking of such testimony.

As to whether the depositions should have been taken jointly or severally by the commissioners named in the commission was a question which the defendant proba- bly waived by not objecting within proper time. The commission was issued to Smith and Thomas, "or to such one or more of you as shall act herein." No objec- tion was taken to this commission on the filing of cross- interrogatories, nor until after the depositions were taken.

It was error to allow plaintiff to prove, by various witnesses, that after the alleged publication by defend- ant these witnesses had read other similar publications in other newspapers, and had heard parties discuss the connection of plaintiff with the failure of Knight, Yan- cey & Co. Such testimony was prima facie incompetent and irrelevant, and nothing appears in this record to show that it was competent or relevant. It was, of course, competent to prove the publication by the de- fendant, and the wide circulation which the defendant gave the alleged libel; but is was not competent to prove that other third parties repeated it or republished it in other newspapers, and thereby increased the curculation and aggravated the damages.

In actions of libel or slander, the plaintiff cannot prove that he sustained special damages, by means of repetitions, by third persons of the same or similar words uttered by the defendant. The defendant was not shown to be responsible or liable for the facts of such third parties repeating, or of such other newspapers in republishing, the alleged libel. If the defendant is liable, such third parties are also liable; but they are not

sued in this complaint. The mere fact that the same reporter who reported to the defendant company also reported it to other papers did not make such evidence admissible on this trial.

A case somewhat similar to this is that of *Bathrick v. Detroit Post & Tribune Co.,* 50 Mich. 629, 16 N. W. 172, 45 Am. Rep. 63. In that case it appears that the plaintiff offered to prove the publication of the matter in other papers; and the court, speaking through Cooley, J., said: Mr. Brown, the local correspondent at Battle Creek, who had furnished the article complained of for defendant's paper, was called by the plaintiff to prove that he also furnished the articles for the Chicago papers. This was objected to, but the evidence received. The tendency was to suggest to the jury that the defendant was in some manner responsible for the Chicago publications. But this was an error. Brown was in no sense the general representative of any one of the papers, and neither of them was in any respect responsible for what he might do, except in so far as it might adopt his articles and make them its own by publishing them. Neither of them had any more concern with what Brown might do with or for the others than if it were done by any third person."

The question has been several times before the Supreme Court of Massachusettes, and such evidence has always been held not admissible. In the case of *Hastings v. Stetson,* 126 Mass. 329, 30 Am. Rep. 683, it was said, through Gray, C. J.: "It is too well settled to be now questioned that one who utterers a slander is not responsible, either as on a distinct cause of action, or by way of aggravation of damages of the original slander, for its voluntary and unjustifiable repetition, without his authority or request, by others over whom he has no contro, and who thereby make themselves liable to the

person slandered, and that such repetition cannot be considered in law a necessary, natural, or probable consequence of the original slander."

These decisions date back to the English case of *Ward v. Weeks,* 4 Moore & Payne, 796; s. c., 7 Bing. 211.

The Supreme Court of New York has so decided the question in the case of *Terwilliger v. Wands,* 17 N. Y. 54, 72 Am. Dec. 420. That court, speaking by Strong, J., said: "The words spoken by the defendant not being actionable of themselves, it was necessary in order to maintain the action to prove that they occasioned special damages to the plaintiff. The special damages must have been the natural, immediate, and legal consequence of the words.—Stark. on Sland. by Wend. (2d Ed.) 203; 2 Id. 62, 64; *Beach v. Ranney,* 2 Hill ( N. Y.) 309; *Crain v. Petrie,* 6 Hill (N. Y.) 522 [41 Am. Dec. 765]; *Kendall v. Stone,* 5 N. Y. 14. Where words are spoken to one person, and he repeats them to another, in consequence of which the party of whom they are spoken sustains damages, the repetition is, as a general rule, a wrongful act, rendering the person repeating them liable in like manner as if he alone had uttered them. The special damages in such a case are not a natural, legal consequence of the first speaking of the words, but of the wrongful act of repeating them, and would not have occurred but for the repetition; and the party who repeats them is alone liable for the damages.—*Ward v. Weeks,* 7 Bing. 211; *Hastings v. Palmer,* 20 Wend. (N. Y.) 225; *Keenholts v. Becker,* 3 Denio (N. Y.) 346; *Stevens v. Hartwell,* 11 Metc. (Mass.) 542."

It is, of course, proper to show that the defendant repeated the same words to show malice. Such repetition is evidence of malice, and may thereby aggravate the damages.—Newell on Libel & Slander, pp. 349, 350. Every repetition of a slander, or the publication thereof by

a newspaper, is a republication, rendering each person so repeating or republishing liable to an action, as well as the initial one. It is no defense that the defendant did not originate the slander or libel. Of course, if the defendant causes or induces the republication, such evidence would be admissible to show malice, and to aggravate the damages to the same degree as if the defendant itself had republished the libel. But it was not shown in this case that the defendant corporation caused or induced the republication, in the Montgomery, Mobile, New Orleans, Atlanta, Pensacola, and Memphis papers, as to which the witness testified. Nor was it shown that the defendant caused or induced various individuals to repeat what the papers had said on the subject of the Knight, Yancey & Co. failure. Of course other newspapers are liable to republish reports such as the one complained of, and people are liable to talk about and discuss such reports and thereby circulate and give notoriety thereto; but the law is that the initial slanderer or libeler is not responsible, in an action of slander or libel, for such repetitions and republications of the libel or slander.

We have not overlooked the fact that there was an attempt to show that the Age-Herald induced or aided in the publication of similar reports in other papers, to wit, the Commercial-Appeal; but there was a complete failure so to do. In fact, it was conclusively shown that the Age-Herald had nothing whatever to do with the publication in other papers, and the proffered evidence on the subject was excluded.

The trial court also erred in giving charge No. 7, as requested by the plaintiff. This charge is as follows: "I charge you that under the law of Alabama this defendant, the Age-Herald Publishing Company, is responsible for the publication of any libel which may result in actionable injury."

[Age-Herald Publishing Co. v. Waterman.]

This charge would authorize a recovery against this defendant for publications made by other newspapers than itself, and for which it is not at all responsible. The charge does not even attempt to limit the publication to that made by the defendant, but includes all, by whomsoever made, "which may result in actionable injury." It does not even limit liability to cases which "do result," but includes all which "may" so result. The charge illustrates the erroneous theory upon which the court admitted proof of the publications of the same or similar reports in various newspapers of the South about the time the report in question appeared in the defendant's paper. The trial court seems to have proceeded upon the theory that this defendant is liable for each and all of these separate publications, in this action, which, as we have shown, was erroneous.

Charges 8 and 9, given at the request of plaintiff, were erroneous and improper, as applied to the issues and the evidence in this case; the charges requesting a finding for the plaintiff if the jury were reasonably satisfied from the evidence that the plaintiff had been injured in the manner and under the circumstances averred in the complaint. The defendant had interposed special pleas, in which it alleged that the matters published were as to it privileged matter, and for which publication the defendant was not liable, though the publication would otherwise be actionable. There was evidence tending to support the pleas, and the court could not thus take away from the jury the right to pass upon the same, and, if the jury should have found the pleas to have been proven, then, of course, the plaintiff could not recover.

Charges like the ones in question were held bad, and their giving reversible error in th cases of *Frierson v. Frazer*, 142 Ala. 232, 37 South. 825, and *Alabama Steel & Wire Co. v. Thompson*, 166 Ala. 460, 52 South. 75; the

latter case overruling the case of *Virginia Bridge Co. v. Jordan,* 143 Ala. 603, 42 South. 73, 5 Ann. Cas. 709. It is true that in those cases the charges were held bad because they ignored the special pleas of contributory negligence; but the rule would necessarily be the same as to special, pleas setting up privileged matter in actions of libel and slander.

As the case must be reversed, we deem it unnecessary to pass upon other questions which may not arise on another trial.

Reversed and remanded. All the Justices concur in the reversal as to the points upon which the case is reversed, but do not desire to commit themselves to all that is said in the opinion, deeming this not necessary, since all the counts were eliminated except count 2.

