(81 South. 621)

AGE-HERALD PUB. CO. v. WATERMAN.
(6 Div. 366.)

(Supreme Court of Alabama.   Feb. 6, 1919.
Rehearing Denied April 10, 1919.)

1. LIBEL AND SLANDER ⊚⇒80—COMPLAINT.

A complaint charging a libelous publication implying that plaintiff had criminal knowledge of certain fraudulent transactions involving issuance of spurious bills of lading, and that he had gone abroad and did not intend to return because of his connection with such frauds, etc., *held* not demurrable.

2. APPEAL AND ERROR ⊚⇒233(2)—OBJECTIONS IN LOWER COURT—STRIKING OUT IMPROPER ALLEGATIONS.

Although an amended count included improper allegations with respect to damage for which no recovery could be had, the trial court will not be put in error for refusing to strike such matter on motion; it being open to defendant to object to the evidence offered in support thereof and to eliminate it by requesting proper instructions.

3. LIBEL AND SLANDER ⊚⇒93—SPECIAL PLEAS —PRIVILEGE.

Where a libel complaint anticipated and denied the defense of qualified privilege, defendant had no need of special pleas setting up qualified privilege, since it had the full benefit of that defense under the general issue.

4. LIBEL AND SLANDER ⊚⇒101(4)—BURDEN OF PROOF—PRIVILEGE.

Where a libel complaint anticipated and denied the defense of qualified privilege, plaintiff assumed the burden of disproving defendant's honest intention and the fairness of the report as published, and defendant was relieved of the burden of proof.

5. LIBEL AND SLANDER ⊚⇒93—PLEA OF PRIVILEGE.

A plea of privilege which did not show that alleged libelous publication was restricted to official proceedings and testimony at a meeting of a bankrupt's creditors rather than to private remarks and discussions by spectators *held* demurrable.

6. LIBEL AND SLANDER ⊚⇒93—PLEA OF PRIVILEGE.

A plea of privilege *held* not demurrable as failing to show that publication was restricted to official proceedings and testimony in a meeting of a bankrupt's creditors rather than to private remarks and discussions by spectators.

7. APPEAL AND ERROR ⊚⇒1040(7)—HARMLESS ERROR—SUSTAINING DEMURRER TO PLEA.

Error in sustaining a demurrer to a plea of privilege in a libel case *held* harmless, where defendant had the full benefit of such defense under the general issue.

8. DEPOSITIONS ⊚⇒56(2)—NOTICE—NECESSITY.

Act of April 18, 1911 (Laws 1911, p. 487), providing for the giving of notice of time and place of taking depositions, *held* not applicable to depositions the taking of which had been previously put in fieri by filing of interrogatories.

9. DEPOSITIONS ⊚⇒88—ADMISSIBILITY IN EVIDENCE.

If direct interrogatories in a deposition were excluded because the subject-matter was inadmissible, cross-interrogatories should also be excluded.

---

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

10. DEPOSITIONS ⬄65—PROVISIONAL CROSS-EXAMINATION—NOTICE.

It is not necessary in taking depositions to give formal notice that cross-examination is provisional; a seasonable objection to the examination in chief or any distinct portion of it being sufficient.

11. DEPOSITIONS ⬄110 — EXCLUSION OF CROSS-EXAMINATION—OBJECTION.

Although some parts of cross-answers in a deposition were subject to withdrawal or exclusion, where the motions were not so restricted and directed as to raise the question, they were properly overruled.

12. DEPOSITIONS ⬄64(3)—CROSS-INTERROGATORIES—RESPONSIVENESS OF ANSWER.

Where, in answer to inquiry as to the substance of an alleged libelous article, the witness stated its effect as he understood it, his answer was not responsive.

13. LIBEL AND SLANDER ⬄123(2)—QUESTION FOR JURY.

It was for the jury to determine whether in fact a publication was libelous in its implications with respect to the plaintiff.

14. LIBEL AND SLANDER ⬄7(1) — PUBLICATION IMPUTING FRAUD.

A publication imputing a criminal fraud to plaintiff in that he had criminal knowledge of certain cotton frauds involving issuance of fraudulent bills of lading, etc., held libelous per se.

15. LIBEL AND SLANDER ⬄33—PRESUMPTION OF INJURY.

Where a publication was libelous per se, imputing to plaintiff a criminal fraud, injury would be presumed, and a substantial recovery could be had without proof of actual damage.

16. LIBEL AND SLANDER ⬄42(1)—PRIVILEGE—REPORT OF JUDICIAL PROCEEDING.

A fair and accurate report may be made of a judicial proceeding either by reporting it literally and completely or by giving a more or less condensed summary.

17. LIBEL AND SLANDER ⬄123(8)—QUESTION FOR JURY—PRIVILEGE.

In the case of a partial or condensed report of judicial proceedings, its fairness and accuracy is generally a question for the jury, and in the case of an alleged libelous report of a meeting of a bankrupt's creditors, such question held to be one of fact.

18. LIBEL AND SLANDER ⬄101(1, 5)—PRESUMPTIONS—FALSITY AND MALICE.

Where the occasion is not one of privilege, the falsity of an alleged libelous publication is presumed, and malice is presumed from falsity.

19. LIBEL AND SLANDER ⬄101(4)—PRESUMPTION—PRIVILEGE—MALICE.

Where an occasion is privileged, and the alleged libelous publication is found to be fair and accurate, there is no presumption of malice from falsity.

20. LIBEL AND SLANDER ⬄101(4)—REPORT OF CREDITORS' MEETING—MALICE—PRESUMPTION.

In an action of libel, held, that there was nothing in the language of the publication, alleged to be a report of a meeting of a bankrupt's creditors, or in the circumstances under which it was made, which had any tendency to support an inference of actual malice.

21. LIBEL AND SLANDER ⬄9(1) — WORDS TENDING TO INJURE IN BUSINESS.

There can be no recovery for a libel alleged to have affected a person in his trade, profession, and business unless plaintiff was at such time in the exercise of or actually performing such trade, business, or profession.

22. TRIAL ⬄260(6)—REQUEST COVERED BY INSTRUCTIONS.

A charge that damages in a libel case could not be awarded for injury to plaintiff's business does not fairly cover the theory of a requested charge that plaintiff could not recover such damages unless the plaintiff at such time was in the exercise of or actually performing such business.

23. LIBEL AND SLANDER ⬄50½—EXCEEDING PRIVILEGE—REPORT OF CREDITORS' MEETING.

Although a meeting of a bankrupt's creditors furnishes an occasion for a qualifiedly privileged publication, when such publication exceeds its proper limits and is not fair and accurate, the privilege is lost.

24. TRIAL ⬄253(3)—INSTRUCTIONS IGNORING ISSUE.

Where a charge in a libel case ignored the issue that, although an occasion may be priviliged, such privilege is lost where the publication exceeds its proper limits, and is not fair and accurate, it was properly refused.

25. TRIAL ⬄234(9)—INSTRUCTION—EXCLUDING EVIDENCE.

The practice of presenting to the jury elements of damage for which no recovery can be had, especially where their impropriety has been affirmed by a previous ruling of the Supreme Court, and then consenting to their theoretical exclusion by general instruction, is condemned.

Appeal from Circuit Court, Jefferson County; E. C. Crow, Judge.

Action by John B. Waterman against the Age-Herald Publishing Company for damages for libel. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

For former report of this case, see Age-Herald Co. v. Waterman, 188 Ala. 272, 66 South. 6, Ann. Cas. 1916E, 900.

The trial was had on count 2 of the complaint as last amended, which is as follows:

Plaintiff, John B. Waterman, claims of the defendant, Age-Herald Publishing Company, a corporation, the sum of $30,000 damages for falsely and maliciously publishing of and concerning plaintiff, in a newspaper published in Birmingham, Jefferson county, Ala., called Birmingham Age-Herald, on, to wit, the 28th day

of May, 1910, with intent to defame plaintiff, a statement in substance as hereinafter set out; and plaintiff avers that shortly before the publication aforesaid a firm or concern known as Knight, Yancey & Co., which had been for several years engaged in buying and selling cotton on a large scale, with its main offices in Alabama, and with customers in the chief foreign centers, such as Liverpool, Bremen, Havre, and like ports, had failed, and had filed its petition in bankruptcy in the federal court for the Northern district of Alabama, and had been adjudged a bankrupt, with heavy liabilities alleged in the course of said bankruptcy proceedings, and widely understood by cotton brokers and factors, transportation men, and the general public whose attention had been directed to the said proceedings as representing or growing out of the negotiation of a vast amount of spurious and fraudulent bills of lading for cotton, which falsely purported on their face to represent cotton delivered to a railroad or steamship line. Plaintiff avers that there existed a general and intense interest in the cotton and shipping trade as to the supposed frauds and as to the methods by which and the persons by whom the same had been committed, so that any suggestion of complicity in or knowledge of said frauds on part of any railroad or steamship agent who had been handling business or had issued bills for said firm over his line would tend to cast suspicion upon him in the eyes of the public, as a possible accomplice.

Plaintiff avers that at the time of the alleged publication, and for many years prior thereto, plaintiff's business and vocation was and had been that of freight or shipping agent, contractor, or representative in Mobile, Ala., cotton constituting a large proportion of the freight handled, and that plaintiff then resided in Mobile, Ala., intending to reside and continue his business at that point, having completed the preliminary organization of a shipping company, to wit, the Mobile Liners, Incorporated, to represent on a commission basis, among others, the Leyland and the Harrison Lines, the largest among the largest cotton carrying steamship lines in the world, of which organization plaintiff was to be its manager, at a salary of, to wit, $4,000 per annum and a fifth interest in the business, with plaintiff's permanent office in Mobile, and that a short while before this publication herein complained of plaintiff had proceeded to England in furtherance of his said company, at a great personal expense to himself, and was on, to wit, the date of the issue of the said publication, to wit, May 28, 1910, on board ship, or had engaged passage and was about to embark on his return journey.

Plaintiff further avers that in the course of what purported to be an account of a hearing in the said bankruptcy proceedings, in which witnesses were examined relative to the affairs of said bankrupt firm, the defendant falsely and maliciously, and with intent to defame plaintiff, published in its said newspaper, of the issue of May 28, 1910, immediately following a paragraph of said publication relating to a suggestion of criminal knowledge on part of others than one of the members of said firm, without giving the correct or proper context, connection, or sequence, the following matter of and concerning plaintiff, the paragraphs first set out hereinafter, down to and including the words "upon which no shipments had been made when outstanding," being included for the purpose of showing the context, and the "Waterman" referred to in said publication being the plaintiff:

#### "Nesbitt Next Heard.

"After Mr. Yancey came W. D. Nesbitt, the Birmingham member of the firm, who went to Huntsville and placed the company in the hands of the receivers, the testimony of Mr. Nesbitt was not essentially important, inasmuch as he, like Mr. Yancey, was not familiar with the operations of Knight, Yancey & Co., except in a general way.

"'I was called to Decatur Saturday night preceding the failure,' began Mr. Nesbitt, 'by a telegram from John Knight. Sunday morning I went into consultation with John Knight. In half hour I knew the firm was hopelessly insolvent, and I immediately mapped out a plan to have receivers appointed. Knight did not try to shield himself, but made a complete confession to me. He said that the firm was short about $6,000,000, and that speculation caused it. He volunteered the information that bills of lading calling for 36,000 bales of cotton upon which no shipments had been made were outstanding.'

"In answer to a question as to whether Mr. Knight implicated others in the criminal knowledge relative to false bills of lading, the witness said: 'Knight intimated to me that others knew of the fake bills of lading. His intimations were not sufficiently distinct for me to even hazard a guess as to whom he referred. I then told him to shut up, as I did not care to hear any more about it. I simply wished to know how bad we were stuck and then get remedies, to which the creditors were justly entitled.'

#### "Loan to Watterman.

"Mr. Nesbitt was closely questioned by Mr. Benners in regard to a loan of $5,000 which was made to a Mr. Watterman, agent for a Mobile steamship line. It developed that the general belief is that Watterman is abroad and does not intend to return. Mr. Nesbitt said he knew Watterman, but did not know a loan was made to him by Knight, Yancey & Co. Mr. Nesbitt, however, qualified his statement by adding that he presumed it was simply a personal matter between Mr. Knight and Mr. Watterman.

"'Did Mr. Knight mention this loan to you?' was the question asked by Mr. Benners. 'He did,' said Mr. Nesbitt. 'He also told me that the mention of the loan publicly would reflect upon Mr. Watterman.' 'What did he mean by the word "reflect"?' 'I do not know,' answered the witness. The information was disclosed that several large shipments of cotton had been made by way of the line represented by Watterman. It was also brought to light that several curious bills of lading are held upon which cotton was supposed to have been routed by the line represented by Watterman."

The plaintiff avers that said article above quoted and published by the defendant as aforesaid implied and conveyed the meaning, among others, that plaintiff, a resident of Mobile, had permanently absented himself in connection with the matters referred to in said publication, and had dishonorable connection with the affairs of

the said Knight, Yancey & Co., and cast suspicion on plaintiff in connection therewith, and that the same was in these respects inaccurate, false, malicious, and libelous, and was not a fair and correct report of said judicial proceedings; that said items published as aforesaid were given wide circulation by defendant in Alabama and elsewhere, and that said publication of and concerning plaintiff in direct connection with said fraudulent transactions of Knight, Yancey & Co., had reference to plaintiff's business, his finances, and his alleged intentions to abandon his residence and place of business in Mobile, Ala., and that, being published during the investigation of said failure (the Knight and Nesbitt referred to in said publication being members of said firm of Knight, Yancey & Co.) and conveying false meaning and impression above mentioned, thereby directly and proximately cast suspicion upon plaintiff on the part of the cotton and shipping trade, brought him into public contempt and disrepute, injured plaintiff in his said business and calling, and in his reputation, credit, and good name, and caused him to suffer great mental pain, anguish, humiliation, mortification, and distress; cast such suspicion upon plaintiff, or upon his integrity on the part of the cotton or shipping trade as to make it impossible or impracticable for plaintiff to pursue with the business and employment above referred to and cause plaintiff to lose labor and time devoted by him and the sums expended by him in said trip to England, and otherwise in connection with the organization of said shipping or steamship company; caused plaintiff to be deprived of employment by and association in said organization, and to lose the salary agreed to thereof; and caused plaintiff to be permanently or for a long time prevented from following his said business of shipping agent with desirable shipping interests and to lose much time and money—all of which proximately resulted from the publication complained of, to the damage of plaintiff in the sum aforesaid.

The defendant moved to strike out various portions of the count, and also interposed demurrer thereto. The demurrer and motion being overruled, defendant pleaded the general issue and a number of special pleas. Pleas 4, 5, 6, and 7 set up privilege in the publication of a fair and accurate report of judicial proceedings in good faith and without malice. Demurrers were overruled as to these pleas, but demurrers were sustained to pleas 10 and 11. They are as follows:

(10) And for a further plea and answer to said complaint as last amended defendant says that the words complained of and set forth in said complaint are a part of an article published by defendant in its daily newspaper, the Birmingham Age-Herald, on, to wit, the 28th day of May, 1910, which said article, in so far as it referred to the plaintiff, was a full, fair, and accurate report of a meeting held in the courtroom in the United States courthouse at Birmingham, Ala., on to wit, the 27th day of May, 1910, and of the proceedings of said meeting; that said meeting was a meeting of the creditors of Knight, Yancey & Co., bankrupts, held according to law, and was open to the public, and was attended by numerous persons from various parts of Alabama and other parts of the United States, and by numbers of persons other than creditors of said bankrupt; that the proceedings of said meeting consisted, among other things, of an examination before the referee in bankruptcy of some of the members of said bankrupt firm by the trustee in bankruptcy and other interested parties regarding the affairs of said bankrupt firm, and discussions of said affairs by the attorneys, creditors, and others present; that the said Knight-Yancey & Co. was one of the largest Southern cotton firms, and the failure of said firm resulted in losses to its creditors and others who had dealings with it of large sums of money; that the public were interested in said meeting and the proceedings thereof; that the said report of said meeting and of the proceedings thereof was proper for publication, and was published by defendant in good faith, without malice towards plaintiff, and without any intention of injuring him and in the proper course of defendant's business as the publisher of said daily newspaper, and such publication is privileged.

(11) And for further plea defendant says that the matters complained of in this cause are a part of its report of a meeting of the creditors of Knight-Yancey & Co., bankrupts, held pursuant to law in bankruptcy, and at such meeting an investigation was being had pursuant to law to ascertain, among other things, the assets of said bankrupt firm which could be applied to the payment of said bankrupt's debts, and that so much of the article complained of as relates to the said plaintiff is a fair and accurate and impartial report of the proceedings which took place during said meeting of the creditors at the place where said bankruptcy court sat, and from which place the public were not excluded, and that said publication was not made by the defendant for the purpose of injuring the plaintiff, but was made in pursuance of its duty to give publicity to what took place at said proceedings and of which the public had a right to be then and there informed, and that the said publication was made bona fide and without malice toward plaintiff, and without any intention of injuring him, and in the course of plaintiff's business as the publisher of a public journal, and is privileged.

There was judgment for the plaintiff in the sum of $10,000.

Nathan L. Miller and Needham A. Graham, both of Birmingham, for appellant.

Forney Johnston and W. R. C. Cocke, both of Birmingham, for appellee.

SOMERVILLE, J. [1] On the former appeal in this case (Age-Herald Publishing Co. v. Waterman, 188 Ala. 272, 66 South. 16, Ann. Cas. 1916E, 900) we held that count 2 of the complaint was not subject to the demurrer presented against it. This count was amended by elaboration of some of its parts, but without any change in its essential features. Its gravamen still is that the publication complained of is libelous in its implication that Waterman had criminal knowledge of the Knight-Yancey cotton

frauds; that he had gone abroad, and did not intend to return, because of that connection; that public mention of Waterman's having obtained a loan from the bankrupt firm would reflect upon him; and that the steamship line represented by him had routed large shipments of cotton on spurious bills of lading. In accordance with our former ruling, we hold that this count, upon which alone the cause was submitted to the jury, was not subject to the demurrer.

[2] If the amended count included improper allegations with respect to damage, for which no recovery could be had, nevertheless the trial court will not be put in error for refusing to strike such matter on motion, since it was open to defendant to object to the evidence offered in support thereof, or to eliminate it by requesting proper instructions to the jury. W. U. T. Co. v. Rowell, 166 Ala. 651, 51 South. 880; Vandiver v. Waller, 143 Ala. 411, 417, 39 South. 139.

The complaint itself shows that the publication complained of related to a creditors' meeting in bankruptcy, which was a judicial proceeding. It, however, charges that the publication was made falsely, maliciously and with the intent to defame plaintiff, and, further, that it was not a fair and correct report of said judicial proceeding.

[3, 4] It thus appears that the complaint anticipates and denies the defense of qualified privilege, and assumes the burden of disproving its two essential elements, viz. the honesty of defendant's intention and the fairness of the report as published. Defendant therefore had no need for any special pleas setting up qualified privilege, since it had the full benefit of that defense under the general issue, and as a pure gratuity was relieved of all burden of proof.

[5] We remark, however, that plea 10 is defective and subject to the demurrer, in that it does not show that the publication was restricted to the official proceedings and testimony, rather than to private remarks and discussions by persons who were mere spectators.

[6, 7] Plea 11 is free from this defect, and was not subject to any ground of demurrer. But, as noted above, the error in sustaining the demurrer was harmless.

[8] On the former appeal a majority of the court held that the act of April 18, 1911 (Laws 1911, p. 487), providing that the adverse party should have the right to demand and receive reasonable notice of the time and place of taking depositions, was not applicable to depositions the taking of which had been previously put in fieri by the filing of interrogatories, as in the instant case. 13 Cyc. 835; 36 Cyc. 1215. The court adheres to that ruling, and holds that the mo-

tions to suppress plaintiff's several depositions for want of such notice were properly overruled.

Defendant duly objected to certain direct interrogatories propounded by plaintiff in writing to several of his witnesses. Two of these interrogatories were as follows:

"(6) On or after the 27th day of May, 1910, state whether you read or heard discussed any reference as to the connection of the plaintiff, Waterman, with the failure of John W. Knight, or Knight, Yancey & Co.?

"(7) If yea, state briefly the substance and extent of what you read or heard with reference to the plaintiff's connection with said failure," etc.

The answers to these interrogatories were not read in evidence, but were excluded by consent on defendant's motion. But plaintiff was allowed to read in evidence the witnesses' answers to defendant's cross-interrogatory 4, which contained many separate questions, all of which called for details and specifications of the witnesses' newspaper readings "on or about May 26, 27, and 28, 1910," relating to the Knight-Yancey failure or to Waterman in connection therewith, and requesting a repetition thereof in their exact language, or, if not able to quote them accurately, to "state the substance of what was published in each paper." The answer of the witness Turner contained the following:

"The substance of these articles (referring to those in the Birmingham Age-Herald and Montgomery Advertiser) was that Waterman had been implicated in the issuance of spurious bills of lading, had obtained a loan from Knight-Yancey & Co. that was not legitimate, and the Age-Herald article gave the impression that Waterman had left the country for good and did not intend to return, and that he had left because he feared the consequences for issuing spurious bills of lading and for assisting Knight, Yancey & Co. in obtaining money through the medium of these fake bills of exchange."

[9] Defendant moved to exclude this answer because the direct interrogatories which called forth this cross-interrogatory had been excluded, and the cross-interrogatory was provisional only, and also because it was not responsive to the question. This motion was overruled.

In the case of Olds v. Powell, 7 Ala. 652, 657 (42 Am. Dec. 605), it was said:

"If the examination in chief was excluded because the subject-matter of the examination was inadmissible, we think the cross-examination would share the same fate; otherwise great injustice might be done, as the party against whom the deposition was taken could not know in advance whether the examination in chief would be received or not, and might therefore cross-examine the witness conditionally; and, so far as he confined himself to the objectiona-

ble matter brought out upon the direct examination, he would not be bound by it, if the direct examination was not admitted." ·

[10] This is a sound statement of the law, which we fully approve. Nor do we think it is necessary in such cases for the cross-examinant to give formal notice that his cross-examination is provisional; his seasonable objection to the examination in chief, or to any distinct portion of it, being sufficient in that regard.

But we observe in the instant case that a part of the subject-matter of the examination in chief was the article in the Age-Herald of May 28th, and the witness' answer referring to his reading of that article was not excluded, but was read in evidence. The cross-examination related in part to this subject-matter, and, in so far as the cross-answers were responsive thereto, they could not, under the rule above stated, be excluded because some of the answers in chief were excluded. This applies also to each of the other motions of like character with respect to other depositions.

[11] It may be that some parts of these cross-answers were properly subject to withdrawal or exclusion, but the motions were not so restricted and directed as to raise the question. As presented, they were properly overruled, as for this objection, because they were inclusive of the entire answers, only portions of which were within the operation of the rule invoked.

[12] The second objection to the cross-answer of the witness Turner, viz., that it was not responsive to the question, is of more serious concern. Defendant's contention is that the witness did not give the substance of the article in question, but, instead, stated its effect as he understood it.

Taking the answer as a whole, it is, we think, perfectly clear that the witness, whether designedly or unconsciously, undertook to interpret the article as it impressed his own mind, and to draw conclusions as to its meaning and effect. Upon its face his statement was not a statement of the substance of the article. Under the pretense of stating the substance, he stated his own inferences merely; and under the cloak of this answer, not justified by any question propounded by defendant, plaintiff succeeded in presenting to the jury the conclusions of the witness upon the most vital question in the case—the conclusions which were for the jury to draw, unaided by the opinions of witnesses.

We think that this answer should have been excluded upon defendant's motion, and that the failure of the trial court to do so was erroneous and essentially prejudicial to defendant.

Many questions of law and fact were presented upon the trial of the case, some of which need be considered only in general terms.

[13-15] ·It was for the jury to determine whether in fact the publication was libelous in its implications with respect to the plaintiff, Waterman. And, if so determined, in accordance with the charges of the complaint, it seems clear that it was libelous per se, since it imputes a criminal fraud. Ferdon v. Dickens, 161 Ala. 181, 49 South. 188. In such a case injury would be presumed, and a substantial recovery could be had without proof of actual damage.

Under the allegations of this complaint, which showed that the occasion of the publication was one of qualified privilege, the burden, as heretofore stated, was on plaintiff to show either that the report of the proceeding was not fair and accurate, or else that it was made maliciously with the intention of injuring plaintiff—that is, with actual malice.

[16, 17] A fair and accurate report may be made of a judicial proceeding either by reporting it literally and completely, or by giving a more or less condensed summary. And in case of a partial or condensed report its fairness and accuracy with respect to the particular question in hand must in general be determined by the jury. Parsons v. Age-Herald Publishing Co., 181 Ala. 439, 449, 61 South. 345. In the instant case it was clearly a jury question.

[18, 19] Where the occasion is not one of privilege, the falsity of the publication is presumed, and malice is presumed from falsity. But where the occasion is privileged, as here, and the publication is found to be fair and accurate, there is no presumption of malice from falsity, and the plaintiff cannot recover without proof of actual, as distinguished from merely legal, malice. 25 Cyc. 524 (B).

[20] We are unable to discover anything in the language of this publication, or in the circumstances under which it was made, which has any tendency to support an inference of actual malice; and the trial judge, with plaintiff's consent, specifically instructed the jury that they could not award punitive damages. Yet defendant was not for this entitled to the general affirmative charge under the general issue, since, as above pointed out, the issue of fair and accurate report could not be determined in his favor by the court as a matter of law.

[21, 22] Refused charge 36, which instructs the jury that "there can be no recovery on account of having affected a person in his trade, profession, or business, unless you are satisfied from the evidence that the plaintiff at said time was in the exercise or actually performing said trade, business, or profession," is a correct statement of the law, and should have been given. Harris v. Burley, 8 N. H. 216; Gattis v. Kilgo, 128 N. C. 402, 38

S. E. 931; Dicken v. Shepherd, 22 Md. 399; 25 Cyc. 329, 2; Newell on Slander & Libel, 175. The evidence shows that, when this publication was made, the plaintiff had abandoned his service as agent of the steamship line to which reference was made in the publication complained of; and the written charge actually given to the jury that they could not award any damages to the plaintiff for injury to his business does not. fairly cover the theory and application of the refused charge.

Refused charge 9 instructs the jury that, "if the evidence fails to show that the defendant, in making said publication, had actual malice towards the plaintiff, then you must find in favor of the defendant." It is true that, where the communication is privileged, the burden of proof is on the plaintiff to show actual malice. Lawson v. Hicks, 38 Ala. 279, 285, 81 Am. Dec. 49; Newell on Slander & Libel, § 770.

[23, 24] But it must be observed that, although the occasion may be privileged, the publication may exceed its proper limitations, and, when it does so, the privilege is lost. So in this case, although the judicial proceeding furnished the occasion for a qualifiedly privileged publication, the publication was not within the protection of the privilege unless it was fair and accurate. The charge referred to ignored this issue, which, as already stated, was one for the jury to determine. It was therefore properly refused, as were for the same reason charges 25, 28, and 31.

[25] It is not necessary to rule upon the merits of defendant's motion for a new trial. We feel called upon to say, however, that the practice of presenting to the jury elements of damage for which no recovery can be had, especially where their impropriety has been affirmed by a previous ruling of this court, and then, having had the benefit of their general impression upon the mind and sympathy of the jury, of consenting to their theoretical exclusion by a general instruction to the jury not to consider them, ought not to be sanctioned or allowed.

We have omitted the discussion in this opinion of some of the questions argued by counsel. The record is voluminous, the assignments of error are numerous, and the briefs are able and exhaustive. We have given protracted consideration to every feature of the case as presented by the record, but the proper limitations of a judicial opinion forbid a more extensive or more detailed discussion.

For the errors noted, the judgment must be reversed, and the cause remanded for another trial.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.