(98 South. 290)

BERRY v. CITY OF NEW YORK INS. CO. (8 Div. 526.)

(Supreme Court of Alabama. Nov. 29, 1923.)

1. **Libel and slander �آ19—Whole instrument considered in determining whether libelous per se.**

The whole of an instrument must be considered in determining whether it is libelous per se.

2. **Libel and slander ⊂آ1—May take form of praise or jest.**

Libel may consist of irony in the form of praise or abuse under color of jest; as to such, the court will look through the disguise; no other evil motive than that disregard of another's rights which will destroy character for amusement being necessary to constitute the offense.

3. **Libel and slander ⊂آ25—Dictation of libelous letter sufficient publication.**

The dictation, by an insurance company's agent to a stenographer, of a letter in reference to a claim for loss, which contained libelous matter, held a sufficient publication, though the letter may have been conditionally or qualifiedly privileged.

4. **Libel and slander ⊂آ25—Principal liable, though publication was dictation by one agent to another.**

The act of an agent in dictating a libelous letter to another agent of the same principal, a stenographer, is not a single act as relates to publication of the libel and liability of the principal therefor, since for the moment the dictating agent is the alter ego of the principal, and the dictation a sufficient publication.

5. **Libel and slander ⊂آ41—Good-faith communication predicated on duty or interest privileged.**

A communication prompted by duty to the public or a third person, or by a person having an interest in the subject-matter to another likewise interested, is privileged, if made in good faith.

6. **Libel and slander ⊂آ101(1)—Burden of proving malice in privileged communication on plaintiff.**

Where a prima facie case of qualified privilege is established, the burden of proving malice is on plaintiff.

7. **Libel and slander ⊂آ50—Language used in qualified privileged communication considered.**

Violent language used in a qualified privileged communication may be considered as affecting good faith.

8. **Libel and slander ⊂آ50½—Libelous matter in privileged communication must relate to subject involved.**

The publication of libelous matter, to be privileged, must be for the purpose of the occasion or business in hand, and not thrown in without connection out of an evil motive.

9. **Libel and slander ⊂آ112(2)—Evidence held to warrant finding of lack of good faith in privileged communication.**

In an action for libel, based upon a letter, a qualifiedly privileged communication, written by an insurance agent, if it be deemed that the letter intended to charge plaintiff with burning his property for the insurance, evidence held to warrant a finding of lack of good faith in defendant's agent.

10. **Libel and slander ⊂آ51(1)—Mode and extent of publication considered on question of malice.**

The mode and extent of publication may be considered on the question of malice.

11. **Libel and slander ⊂آ7(7)—Letter concerning fire loss by insurance agent held not libelous per se.**

A letter written by one insurance agent to another, who had just reported a loss of his own, which indicated a familiarity and friendship between the parties, and which, after promising an effort to get an early adjustment, continued, "You must need the money, otherwise there would have been no occasion for the fire," held not libelous per se.

12. **Libel and slander ⊂آ112(2)—Malice of writer of libelous letter held not established.**

Evidence held insufficient to establish malice in the writing of an alleged libelous letter of a privileged nature.

Appeal from Circuit Court, Franklin County; Chas. P. Almon, Judge.

Action for libel by T. R. Berry against the City of New York Insurance Company. From a judgment for defendant, plaintiff appeals. Affirmed.

W. L. Chenault and Travis Williams, both of Russellville, for appellant.

The dictation of a libelous letter to a stenographer, who types it, is sufficient publication. Ferdon v. Dickens, 161 Ala. 181, 49 South. 888. If the words spoken are action-

able per se, malice is presumed. Jones v. Spradlin, 18 Ala. App. 29, 88 South. 373.

Coleman, Coleman, Spain & Stewart, of Birmingham, and A. H. Carmichael, of Tuscumbia, for appellee.

If, from the uncontroverted evidence, there is no malice shown, there exists no cause of action, and it becomes the duty of the court to direct a verdict for the defendant. Townsend, Libel & Slander, § 288; 25 Cyc. 547; Ward v. Ward, 47 W. Va. 766, 35 S. E. 873; Brewer v. Chase, 121 Mich. 536, 80 N. W. 575, 46 L. R. A. 397, 80 Am. St. Rep. 527; Bohlinger v. Germania L. I. Co., 100 Ark. 477, 140 S. W. 257, 36 L. R. A. (N. S.) 454, Ann. Cas. 1913C, 613.

BOULDIN, J. The plaintiff, appellant, sued the appellee for damages resulting from an alleged libel upon the plaintiff. The general affirmative charge with hypothesis was given for defendant, appellee. The means of expression of the libel charged was the following letter, addressed to plaintiff:

"Jacksonville, Fla., July 13th, 1921. Mr. T. R. Berry, Russellville, Ala.—Dear Tom: Loss: No. 20108 Berry. Your wire, also your notice that your furniture had been destroyed, came in due course—adjustment being referred to the Southern Bureau at Birmingham, with request that they give same as prompt attention as possible, *as you must need money, otherwise, there would have been no occasion for the fire.* They will probably send Cotter up to see you. Please show him a good time. With kindest regards, remain, sincerely, P. H. Hoffman, Special Agent." (Italics supplied.)

This letter was dictated by the defendant's special agent, Hoffman, to a stenographer also in the employ of the defendant. The stenographer put her notes into typewriting. The letter was posted to plaintiff. Its terms were not otherwise disclosed. The alleged libelous matter in the letter is italicized.

[1] A first inquiry is: Is the publication libelous per se? This is to be determined from a reading of the letter itself. The test is: What do its contents import to an unbiased mind of ordinary intelligence? The instrument is to be read as a whole. Newell on Slander and Libel (3d Ed.) §§ 366, 367, 368; Gaither v. Advertiser Co., 102 Ala. 458, 14 South. 788; Easley v. Moss, 9 Ala. 266; Johnson v. Turner, 159 Ala. 356, 47 South. 570; L. & M. R. R. Co. v. Malone, 200 Ala. 380, 76 South. 296.

So reading the letter with a view to ascertain its effect disclosed within its four corners, we note: (1) It is addressed to the person of whom the alleged libelous words are written; not an imputation of crime addressed to a third person or persons. (2) He is addressed as "Dear Tom"—terms of familiarity, if not friendship. (3) "Loss: No. 20108 Berry. Your wire, also your notice that your furniture has been destroyed, came in due course"—the usual acknowledgment of a business communication, identifying the subject-matter of the letter. (4) "Adjustment being referred to the Southern Bureau at Birmingham, with request that they give same as prompt attention as possible"—advice that the writer is attending to the business in hand, along with a personal request for prompt attention. (5) "As you must need money, otherwise, there would have been no occasion for the fire"—the expressed reason for pushing the adjustment and payment of the loss. (6) "They will probably send Cotter up to see you. Please show him a good time"—drawing upon the friendship between the parties to the letter for a friendly courtesy to another. (7) "With kindest regards, remain, Sincerely, P. H. Hoffman, Special Agent"—words never fitting except from friend to friend.

A little further study discloses at least an implied assurance of the writer's desire for a prompt payment of the loss.

"The adjustment of a loss * * * is the settling and ascertaining the amount of the indemnity which the insured, after making all proper allowances, is entitled to receive." "'Examination' and 'adjustment' are not convertible terms." Pennsylvania Fire Ins. Co. v. Draper, 187 Ala. 103, 65 South. 923; Liverpool, etc., Ins. Co. v. Tillis, 110 Ala. 212, 17 South. 672.

Used in the ordinary sense employed by insurance men, the request for prompt "adjustment," coupled with the words, "as (because) you must need the money," can only be read as expressing a purpose to help the addressee get his money for the loss.

Now, if we give a literal import to the words, "else there would have been no occasion for the fire," we have Mr. Hoffman charging Mr. Berry with burning his property for the insurance, and at the same time confederating with him to collect it from the insurance company.

If the letter imputes a crime to Mr. Berry, it also imputes to Mr. Hoffman an effort to forward the perpetration of a fraud on his company. The ordinary reader would hardly expect any such purpose set down in a written document. Here, then, is a document utterly at variance in its different parts. Every portion of it shows an intimate, friendly business message, save that portion in which he gives his reason for requesting a prompt adjustment. Instead of claiming a special friendship or business connection as the occasion for special efforts in Mr. Berry's behalf, he throws in the words complained of as libelous. Taken literally, the letter is an enigma.

[2] One of the known forms of libel is a publication cloaked in irony—censure in the guise of praise. Another subtle type is open abuse under color of a jest. Words may be

uttered with malicious intent to hurt, while the speaker hides behind a screen of friendly humor. The courts look through all such disguises, and take note of the real imputations of such utterances. Age-Herald Pub. Co. v. Waterman, 188 Ala. 272, 283, 66 South. 16, Ann. Cas. 1916E, 900; Newell on Slander and Libel (3d Ed.) §§ 335, 336, p. 358.

[3] It is none the less true that praise may take the form of censure. Men daily use accusing words toward each other in a spirit of playful, friendly banter. Such is considered the peculiar privilege of intimate friends. When the nature of such accusation, and the manner of publication, is calculated to injure character, it is libelous, although in jest. No other evil motive is necessary than that disregard of the rights of another which will lightly destroy character for amusement. Age-Herald Pub. Co. v. Waterman, 188 Ala. 272, 289, 66 South. 16, Ann. Cas. 1916E, 900; Newell on Slander and Libel (3d Ed.) § 885, p. 888, §§ 387 et seq., pp. 393 to 396.

"The dictation of a libelous letter to a stenographer, who copies it from his notes on a typewriting machine, and the subsequent signing thereof by the person dictating, is a publication of the contents of the letter sufficient to support libel or slander, although there is no communication of its contents to any other person. Gambrill v. Schooley, 93 Md. 48, 48 Atl. 730, 52 L. R. A. 87, 86 Am. St. Rep. 414." Ferdon v. Dickens, 161 Ala. 181, 187, 49 South. 888, 891.

Appellee insists that the rule above announced has been departed from in recent cases. L. R. A. 1918F, 568, 569, note.

It is urged that on occasions of conditional or qualified privilege, we should reconsider or limit the above case. We have given careful thought to the argument. One element of libel is injury to one's good name in the mind of one who reads the libelous document. It is manifest that one who receives a dictation, takes notes, reduces same to typewriting, may be influenced in his or her estimate of the character of a person by libelous matter therein. On principle a man is as much entitled to protection in the esteem of a stenographer as of any one else.

[4] But it is urged that where liability is sought to be fastened upon a principal, which must rest upon an act of the agent, done in the scope of his employment, the dictation of a letter by one agent to another, who transcribes it, must be considered one act, in so far as it affects the principal. We think this contention ignores the essential nature of the libel. In the case supposed, the agent who dictates the letter causes it to be written, and, so read, is for the moment the alter ego of the principal. The injury does not consist in the loss of esteem by an absent and may be corporate employer. The evil effect is in the loss of esteem by the stenographer in person, and not in any relation to the chief agent nor the common employer.

We reaffirm Ferdon v. Dickens, 161 Ala. 181, 49 South. 888, and hold there was sufficient publication in this case, if the letter was otherwise libelous.

[5] Another question is presented under the pleas of qualified or conditional privilege.

"Where a party makes a communication, and such communication is prompted by duty owed either to the public or to a third party, or the communication is one in which the party has an interest, and it is made to another having a corresponding interest, the communication is privileged, if made in good faith and without actual malice. * * * The duty under which the party is privileged to make the communication need not be one having the force of legal obligation, but it is sufficient if it is social or moral in its nature and defendant in good faith believes he is acting in pursuance thereof, although in fact he is mistaken." 25 Cyc. pp. 385, 386; Smith Bros. & Co. v. Agee & Co., 178 Ala. 627, 59 South. 647, Ann. Cas. 1915B, 129; Kenny v. Gurley, 208 Ala. 623, 95 South. 34, 26 A. L. R. 813; Age-Herald Pub. Co. v. Waterman, 202 Ala. 665, 81 South. 621; Starks v. Comer, 190 Ala. 245, 67 South. 440; Ferdon v. Dickens, 161 Ala. 181, 49 South. 888; Lawson v. Hicks, 38 Ala. 279, 81 Am. Dec. 49.

[6-8] A letter within the protection of this rule is not actionable, unless prompted by malice. When the evidence makes a prima facie case of qualified privilege, the burden of proof is on plaintiff to prove malice. The violent character of the language used may be considered with the other facts on the question of good faith. One essential feature is that the publication must be for the purpose of the occasion—that is, the business in hand. Libelous matter in a letter, thrown in, not in performance of any duty in connection with the business to which it relates, but merely out of evil motive to injure another, is malicious. Donaldson v. Robertson, 15 Ala. App. 354, 73 South. 223. A letter by the proper agent, touching a claim for a fire loss under an insurance policy, furnishes the occasion for a privileged communication to provoke inquiry as to the bona fides of the claim.

Does the evidence in this record make a case of this sort? It was written, not to some one having the duty to make examination in connection with the cause of the fire, but to the insured himself. Mr. Berry's claim was not made as agent of the company for some other customer, but as the insured. The libelous accusation in the letter, if so it be, could serve no purpose but to put the claimant on guard. On its face, as heretofore shown, it did not indicate a bona fide purpose to contest the good faith of the loss. Looking to the other evidence, it ap-

pears without dispute that on the same date and upon the same occasion, he wrote the adjustment bureau as promised. He gave no hint to this bureau of any question as to the origin of the fire. On the contrary, he wrote:

"Will ask that you kindly make a special effort to give the loss prompt attention, as it is the property of an agent."

The evidence nowhere discloses any probable cause for Mr. Hoffman to believe Mr. Berry burned his property for the insurance, nor any word or act of Mr. Hoffman to his company or its representatives intended to provoke inquiry. It appears the loss was promptly adjusted and paid, which further negatives any inference that Hoffman interfered therewith.

[9] In this state of the evidence, if there was an intent to make the accusation of crime indicated by the literal language italicized above, the jury would be warranted in finding an absolute want of good faith—that the publication was malicious.

The right solution, therefore, of this case turns on the letter itself, the manner of publication, and other evidence to determine whether they afford grounds for a reasonable inference of malice.

[10] The mode and extent of publication enters into the inquiry of malice, vel non. Newell on Slander and Libel, p. 414. The evidence of the stenographer is to the effect that, while the letter was dictated, Mr. Hoffman, in a pleasant, jocular mood, said to her, "Let's kid the old bird a little;" that she replied, "All right, put it in." Then the words complained of were put in the letter. Mr. Hoffman corroborates this statement. This is uncontradicted. If true, it shows that, at the time of publication the person to whom publication was made understood it was merely kidding. That is a basic inquiry in such case. Stallings v. Newman, 26 Ala. 300, 308, 62 Am. Dec. 723.

The plaintiff testified that he was agent for defendant company; that he met Mr. Hoffman some eight months before; that they had business together. He says: "He called me Tom. We were good friends. I thought him a jolly fellow in those days."

[11] We conclude that the letter on its face is of doubtful import, taken literally, is enigmatical, was probably written as its closing words declare "with kindest regards." It is of that class of publications which may or may not be malicious, therefore not libelous per se. The burden of proof as to malice is on plaintiff.

[12] The undisputed evidence touching the mode and extent of publication, the relation of the parties, and concurring circumstances, negatives rather than supports the inference of malice.

We find no reversible error, and the judgment of the court below is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.