168 So. 173

## BROTHERHOOD OF RAILROAD TRAIN-MEN et al. v. JENNINGS.

### 6 Div. 828.

Supreme Court of Alabama.

March 26, 1936.

Rehearing Denied May 28, 1936.

Crampton Harris, of Birmingham, for appellants.

W. A. Denson, of Birmingham, for appellee.

440

GARDNER, Justice.

The action is libel, rested upon a letter alleged to have been written by Roy C. Smith on December 12, 1923, directed to Lee, the president of defendant organization, at Cleveland, Ohio, which was also the foundation of companion suits heretofore considered by this court. Weir v. Brotherhood of Railroad Trainmen, 221 Ala. 494, 129 So. 267; Richardson v. Brotherhood of Railroad Trainmen, 221 Ala. 449, 129 So. 574; Collins v. Brotherhood of Railroad Trainmen, 226 Ala. 659, 148 So. 133, 134; Bridwell v. Brotherhood of Railroad Trainmen, 227 Ala. 443, 150 So. 338, 341.

Among other matters determined, those opinions settled the question that time and place were material to be alleged and proved. The complaint contains numerous counts with varying charges as to time and place of publication, among them, Birmingham, Ala., and St. Louis, Mo.

Defendants strenuously insist, in the first place, that the trial court erred in the refusal of the affirmative charge duly requested in their behalf as to those counts resting upon Birmingham as the place of publication, and that such a ruling runs counter to the holding of this court in the companion case of Collins v. Brotherhood of Railroad Trainmen, supra.

But the proof on this trial is materially different from that considered in the Collins Case, supra, such a difference which, in our opinion, justified the trial court in submitting these counts to the jury's consideration, without in any way infringing upon the former decisions of this court. Defendants lay much stress upon the following language of the opinion in the Collins Case, supra:

"We may assume, for the purpose of deciding this case only, that Roy C. Smith was an agent of the defendants during the years 1923 and 1924, and that he, in the line and scope of his duties as such, came to Birmingham for the purpose of getting the members of the Switchmen's Union to join his organization; that he failed in his undertaking, and, upon returning to Atlanta, Ga., he wrote the 'Smith letter' to W. G. Lee, president of the Brotherhood of Railroad Trainmen, at Cleveland, Ohio, under date of December 12, 1923; that W. G. Lee, in turn, under date of December 18, 1923, transmitted the 'Smith letter' to F. W. Morey, at Springfield, Mo., with the statement in the nature of instructions, (a) 'which I would be glad to have you carefully preserve and return to me after it has served your purpose.' (b) 'If you feel justified in reaching President Kurn or the general manager of the Frisco and reading to him any part of the enclosed report you have my permission to do so, with the understanding, however, that the source of the information will be treated strictly in confidence.'

"Copies of this 'Smith letter' thereafter turned up in Birmingham, and the original letter also appeared in Birmingham, Ala., before this suit was brought, but it nowhere appears in the evidence that any of the copies of the letter were sent there by defendants, or by their direction, or with their consent, or by their procurement.

"The evidence leaves no room to doubt that T. C. Cashen, international president of the Switchmen's Union—the object of the alleged libelous letter—brought it into this state and exhibited it at Birmingham, Ala. Just how, or in what way, the international president came into possession of the letter, the plaintiff's evidence gives no

hint or suggestion. However, if he got it from Morey, that subordinate official of the defendants exceeded his authority, and violated the duty enjoined upon him by his principal, and the latter was not answerable for the same."

There, it is to be noted reference was to copies of the alleged libelous letter, and the conclusion reached that if the original was brought into Jefferson county, it was Cashen, international president of the Switchmen's Union, of which plaintiff was a member, who so introduced it into that county. But in the instant case the only proof as to Cashen's possession of the original letter was that disclosed by testimony of counsel for plaintiff, who testified that Cashen so delivered it to him after this suit was brought. The action was commenced in September, 1924. There is proof tending to show that Roy C. Smith was in Birmingham in November, 1923, and March, 1924. He was a deputy vice president or organizer for defendants, and the above-noted extract from the opinion in the Collins Case, supra, correctly discloses his purpose. He was, as stated, organizer for defendants, and the evidence justifies the inference that he was in Birmingham to accomplish the purpose of procuring the members of plaintiff's organization to join his own, all within the line and scope of his authority. Morey was general chairman of the Frisco System for defendants' organization.

In the Richardson Case, supra, the court was of the opinion the proof was sufficient prima facie to show that Lee sent Smith's letter to Morey at Springfield, Mo., with instructions to preserve and return, but also with express permission, if Morey felt so justified, in reading to "president Kurn or the general manager, of the Frisco" any part of the report inclosed (Smith's letter) with the understanding that the source of the information be treated "strictly in confidence."

Plaintiff's proof tends to show that the original Smith letter was seen in the hands of one Cowan, chief special officer of the Frisco whose duty it was to see after "anything that might be wrong or improper conduct"; and that either late in December, 1923, or early in January, 1924, this original letter was seen in the hands of Sisson, general manager of the Frisco Railroad in his private car when in Birmingham; that in March, 1924, Goad, special officer for the Louisville & Nashville Railroad, saw this original letter in the office of the superintendent for the Louisville & Nashville Railroad Company in Birmingham, when the then superintendent, W. E. Smith, handed it to him in the presence of Roy C. Smith, the author.

That a publication has, therefore, been shown in Jefferson county, there can be no serious controversy. The important question is whether or not there was proof tending to show defendants' responsibility therefor.

It is to be noted this proof concerned, not mere copies, but the original document itself, identified as such in the hands of those to whom the information therein contained was permitted by Lee, in his instructions to Morey, to be given, that is, the general manager of the Frisco, and this during the latter part of the same month in which it was written, or the early part of the next. And in addition to this, the original is again found in the hands of important Louisville & Nashville Railroad officials at a time when Roy C. Smith, the author, was present in March following. And in the instructions from Lee to Morey, the latter was also directed to report what he had been "able to accomplish along the line referred to."

In the Bridwell Case, supra, this court said: "We have never doubted that responsibility rests upon one who publishes a libel for its repetition to the extent that it was so intended, or was the natural and probable result of the original publication, as where it was known that some person receiving it would naturally or probably or ought reasonably so repeat it. Those are questions for the jury when the evidence is sufficient to reach a reasonable conclusion to that effect."

■ Direct proof of publication by defendant is not essential, but any fact established to the satisfaction of the jury from which it may legally be inferred will suffice. 37 Corpus Juris, 74; 17 R.C.L. 425; 3 Elliott on Evidence, § 2450.

■ And it is well settled that the principal is responsible for the acts of his agent done within the scope of his employment, and in the accomplishment of objects within the line of his duties, though the agent seek to accomplish the master's business in a way not so authorized by the master, unknown to him or even contrary to his direction. Hardeman v. Williams, 169 Ala. 50, 57, 53 So. 794.

442

■ In determining this question of defendants' responsibility, the jury may consider all the facts and circumstances above outlined in connection with the Roy C. Smith report to Lee, the latter's instructions to Morey, and all the proof tending to show the object sought to be obtained, together with the proof that Smith, as organizer, traveled over the country, at the direction of Lee, and came to Birmingham under Lee's orders. All of these matters considered, we are of the opinion that a jury question was presented as to defendants' responsibility for publication in Jefferson county, and that the affirmative charge as to those counts was properly refused.

■ As to Cleveland, Atlanta, and Springfield counts (to so designate them by reference to place of publication), defendants interposed pleas of privilege, and insist these pleas were established to such an extent as to call for the affirmative charge also as to these counts. It may be conceded that the proof as to these communications from one official to another came within the class of conditional or qualified privilege, and sufficed to cast the burden on plaintiff to show actual or express malice. Kenney v. Gurley, 208 Ala. 623, 95 So. 34, 26 A.L.R. 813; Berry v. City of New York Ins. Co., 210 Ala. 369, 98 So. 290; Ferdon v. Dickens, 161 Ala. 181, 49 So. 888; Age-Herald Pub. Co. v. Waterman, 202 Ala. 665, 81 So. 621. But such actual or express malice may be shown, not only by proof of ill will and hostility, but rivalry also, and plaintiff has offered such evidence in this case. In addition, intemperance in the language used may be looked to by the jury in determining the question of such actual or express malice. Phillips v. Bradshaw, 167 Ala. 199, 201, 52 So. 662; Berry v. City of New York Ins. Co., supra.

In Smith Bros. & Co. v. W. C. Agee & Co., 178 Ala. 627, 59 So. 647, 649, Ann.Cas. 1915B, 129, speaking of this question, the court said: "While there are authorities to the contrary, we think the sounder, better rule is that merely *exceeding* the privilege, in consequence of excitement or of intemperance of speech, does not per se destroy the privilege; but that such unnecessarily defamatory expression, upon the privileged occasion, may be considered by the jury in determining actual malice vel non in the utterance; and which, if present, negatives an essential element of qualified privileged communication and defeats the defense based upon that character of privilege."

■ All of these matters considered, we are of the opinion that as to whether or not the privilege was lost was a question for the jury's determination, and that defendants were properly refused the affirmative charge as to those counts.

But, as previously observed, the trial court also submitted to the jury those counts alleging publications in St. Louis, Mo., and it is argued the affirmative charge was due defendants as to these counts. It is to be noted that no proof was offered tending to show defendants had at any time any representative in St. Louis, or that any official of defendants was ever in that city. To establish publication in St. Louis, plaintiff pursued the following course: He offered his counsel as a witness, who testified, in substance, as follows: That he held 'in his hand the original document sued on (Smith letter), and the letter of Lee to Morey; also two envelopes; that the Smith letter, as well as the Lee letter, were each handed to him in his office in Birmingham some time subsequent to the filing of this suit, by T. C. Cashen, president of the Switchmen's Union of North America; at the time they were so handed to witness, these two letters were in an envelope and that envelope was incased in the other envelope he held in his left hand; they were all in one parcel when so handed to him by Cashen. A better understanding of what was offered is disclosed from the following excerpt from the record:

"Mr. Denson (of plaintiff's counsel): Now, we offer this package in evidence, your honor, just as it was delivered to us by Mr. Cashen. (The package thus referred to was an outer envelope with the seal broken, having thereon the United States Post Office Stamp and Postmark 'St. Louis, Missouri. 3 Feb. 5, 10 P. M. 1924' and written thereon the following address: 'Mr. T. C. Cashen, Pres. Switchmens Union, of N. A. 39, North Street, Buffalo, N. Y.,' and having type written thereon and underscored the word *'Personal,'* and inside the envelope thus described there was a second envelope with its seal broken and having thereon the United States Post Office Stamp and Postmark 'Cleveland Ohio 3, Dec. 18, 7–P. M. 1923,' and written thereon the following address: 'Mr. F. W. Morey, 709 Woodruff Bldg., Springfield, Mo.,' and having writ-

ten thereon and underscored the word— '*Confidential*'—and having printed thereon in the upper left hand corner thereof the following words: 'After five days return to Brotherhood of Railroad Trainmen, 820 Superior Ave. West, Cleveland, Ohio.' On the inside of this last described envelope were the original alleged libelous documents sued on and the so-called 'W. G. Lee letter' heretofore referred to and introduced in evidence.

"Mr. Harris (of defendants' counsel): And we object to each, separately and severally, to-wit: The purported W. G. Lee letter, the envelope with the Brotherhood of Railroad Trainmen stamped on it, and then that mysterious envelope with merely 'Cashen' and 'Personal' on it. We object to each one of those, separately and severally; if we may have all the objections and motions we have assigned heretofore, and exceptions, without repeating it."

It is upon this sole proof plaintiff relies for establishment of publication in St. Louis. Stress is laid, therefore, upon the fact that these documents in the envelope (seal broken) addressed to Morey were inclosed in the other envelope (also seal broken) which was addressed to Cashen at Buffalo, N. Y., which latter envelope bore the postmark of St. Louis, Mo., with the word "Personal" typewritten thereon. Reliance is had upon this latter envelope addressed to Cashen with the St. Louis postmark thereon, counsel insisting that the very presence of this envelope with the documents enclosed, in the possession of Cashen, is prima facie proof that defendants sent the letter to Cashen.

In this state, in harmony with the current of authority (22 Corpus Juris, 96, 97; Ann.Cas.1917E, 1059), the regularity of government mail service has been recognized, and the presumption indulged that a letter, postage prepaid, mailed to one at the place of his residence, was received by him—a presumption rebuttable by proof. Holmes v. Bloch, 196 Ala. 322, 71 So. 670; Pioneer Savings & Loan Co. v. Thompson, 115 Ala. 552, 22 So. 511; Babcock v. Huntington, 9 Ala. 869; Ball v. Bank of State, 8 Ala. 590, 42 Am.Dec. 649.

Plaintiff's counsel lays stress upon an expression found in the books, illustrated by the following quotation from Townsend on Slander and Libel (4th Ed.) § 374: "The postmark on a letter has been held prima facie evidence of the publication of the letter. The production by the plaintiff on the trial of a letter addressed to a third person, held evidence of the publication of the letter without the oath of the person to whom the letter is addressed," in support of which is cited in the note Callan v. Gaylord, 3 Watts (Pa.) 321. And in the same note is the observation, "A postmark does not prove itself," citing Abbey v. Lill, 5 Bing. 299; Woodcock v. Houldsworth, 16 M. & W. 124. And in Odgers on Libel and Slander, pp. 499, 500, in connection with the statement that if "defendant write a libelous letter and cause it to be posted, that letter is published both in the county where it is posted, and in the county to which it is addressed," is the further statement upon which plaintiff relies. "The postmark is sufficient prima facie evidence that the letter was in the post office named on the date of the mark," which it is observed overruled the dictum of Lord Ellenbrough in Rex v. Watson, 1 Camp. 215. And in 21 R.C.L. 763, is the statement: "It is well settled that the fact that an envelope bears the postmark of a government post-office is prima facie evidence that the envelope has been in the mail."

We have carefully examined the cases relied upon (New Haven County Bank v. Mitchell, 15 Conn. 206; United States v. Noelke [C.C.] 1 F. 426; United States v. Williams [C.C.] 3 F. 484), and when the facts there disclosed are considered in connection with the opinion, we think it readily appears they do not support plaintiff's contention.

As to the postmark on the envelope being prima facie proof that it had been in the mail, that is now freely conceded, though the authorities cited in the note to Townsend on Slander and Libel, supra, disclose there have been authorities to the contrary. Illustrative is Woodcock v. Houldsworth, supra, an early English case, where is the headnote: "If the postmark of a letter be given in evidence, it ought to be proved, either by persons from the post office, or by persons who are in the habit of receiving letters from that post office." And we think the expression found in the books, relied upon by plaintiff as to postmarks, has reference to this rule of evidence now well established.

We also think that all these authorities presuppose some proof indicating the letter was mailed, that is, that the letter was in the envelope when so mailed.

■ Here no such proof was offered. Cashen did not testify. We have no proof that these documents were in the envelope addressed to Cashen from St. Louis. The mere fact they were so inclosed when Cashen handed them to plaintiff's counsel does not suffice. Such a rule would permit any third person to place any document he saw fit in any envelope which was addressed to him and make out prima facie proof of its receipt. We find no authority sustaining this contention, and are persuaded the trial court erred in the admission of such proof, and in the refusal of the affirmative charge duly requested by defendants as to the counts laying publication in St. Louis.

■ In the opening statement of his case to the jury, counsel for plaintiff engaged in some character of conversation (if it may properly be so designated) with Juror Brock. It is difficult to gather from the record its full import or the purpose of the colloquy. It would appear upon its face to have been highly improper, and the trial court would have been fully justified in requiring its discontinuance. No objection was interposed, and it is only assigned on motion for a new trial. We cannot say on this record that this was a matter so grossly improper and so highly prejudicial as to have been ineradicable, and defendants can therefore, take nothing thereby.

■ But what was said by plaintiff's counsel to one of the jurors in his closing argument is of more serious moment: "I hate to call you out that way, but you know you and I are good friends, and that is why I think I can do it. I sued you one time and that is why I feel like I can talk to you." The juror addressed replied: "Talk to somebody else." And counsel, then addressing the court, said: "He didn't mean that, your honor, there is no harm done, and it is all in good nature." True, this was a matter presented only on motion for a new trial. But it was the conduct of plaintiff's counsel, and as binding as if by plaintiff himself.

In New York Life Ins. Co. v. Turner, 210 Ala. 197, 97 So. 687, 688, we considered remarks made by the plaintiff herself in the presence or hearing of the jurors during the progress of the trial, and held reversible error was committed in denying a new trial. The following observation in that case is here applicable:

"In Craig & Co. v. Pierson Lumber Co., 169 Ala. 548, 53 So. 803, speaking to this question, the Court said:

" 'Aside from protecting the rights of parties, in the fair and impartial administration of justice, respect for the courts calls for their condemnation of any improper conduct, however slight, on the part of a juror, of a party, or of any other person, calculated to influence the jury in returning a verdict. So delicate are the balances in weighing justice that what might seem trivial under some circumstances would turn the scales to its perversion. Not only the evil, in such cases, but the appearances of evil, if possible, should be avoided.'

"But it is argued that this misconduct (if such there was) was known to counsel for the defendants, and that the matter should have been brought promptly to the attention of the court, failing which the defendant should be deprived of his motion for a new trial. Answering a like argument in the authority above cited, the court replied that the alleged misconduct was that of a party to the cause, and that it did not lie in the mouth of such guilty party to object on the ground of speculating on the verdict of the jury, since his own conduct produced the condition. In Louisville & N. R. Co. v. Turney, 183 Ala. 398, 62 So. 885, a like insistence was made, to which the court answered:

" 'The rule invoked, though generally prevailing, has no force in a case where the misconduct of the juror is instigated, prompted, or shared in by the adverse party himself.' "

And in Bell v. State, 227 Ala. 254, 149 So. 687, 689, is the following:

"Considering, however, the matter complained of as occurring at the cafe while the jury were at dinner and during the trial, we observe that there is a class of cases, as to the conduct of counsel and jurors, in which improper conduct during the trial and deliberation—as of familiarity of counsel with the jury or jurors—has been condemned. Ballard v. State, 225 Ala. 202, 142 So. 668; Roan v. State, 225 Ala. 428, 143 So. 454. Each case is to be judged by its peculiar facts, and presented to the court as provided by law. And, when found to be in nature intentional and prejudicial, has been condemned and sufficient to reverse. Counsel and jurors should so conduct themselves during all

stages of the trial as that no misunderstanding, blame, undue or improper influence may result, or so as not to be open to such charge. The test is, (1) not whether the conduct or misconduct did actually influence the jury or a juror without the rules that obtain and outside of the evidence, but (2) that it must not be such as that it might have done so and so improperly influenced the jury or a juror contrary to law and for other motives than those the evidence afforded and the trial warranted."

See, also, Pryor v. Limestone County, 225 Ala. 540, 144 So. 18; Metropolitan Life Ins. Co. v. Carter, 212 Ala. 212, 102 So. 130; Britling Cafeteria Co. v. Shotts, 230 Ala. 597, 162 So. 378.

That such statement to a juror thus singled out was grossly improper can admit of no argument. Nor do we think it can be seriously questioned that it was highly prejudicial, and ineradicable. The jury were.told plaintiff's counsel had sued that particular juror. He was thus disarmed so far as any deliberation in the jury room was concerned. Any adverse attitude to plaintiff might very readily and plausibly be ascribed to this former litigation by his fellow jurors. Our decisions have carefully guarded jury room deliberations. Alabama Fuel & Iron Co. v. Powaski (Ala. Sup.) 166 So. 782.[1] There should be nothing to stifle freedom of debate, nor check independence of thought. Administration of justice by a fair and impartial jury lies at the very foundation of our judicial system. The case of Oliver v. State (Ala.Sup.) 166 So. 615,[2] also serves to illustrate the care the court should take to see that the jury is untrammeled and unfettered by any improper influence. Nothing the court might say could have eradicated the wholly irrelevant fact that plaintiff's counsel had once sued the juror, and he was calling it then directly to the attention of said juror in the presence of his fellow members of the panel.

We have stated our conclusion that such matter was ineradicable, and highly prejudicial, and, in our opinion, the rule of the cases to the effect "no litigant should be permitted to profit by such practice" should here apply. Birmingham Baptist Hospital v. Blackwell, 221 Ala. 225, 128 So. 389.

What has been said should suffice for another trial of the cause. For the error indicated, the judgment is reversed and the cause remanded.

Reversed and remanded.

BOULDIN, FOSTER, and KNIGHT, JJ., concur.

